BARHEYDT, *appellant,* and BARHEYDT and others, *respondents.*

A devise of the *upper half of a farm* to a *son* of the testator, and of the *lower part of same farm* to a *son of such son,* without words of *perpetuity* in the devise to either, but with a condition annexed that *the son* shall pay certain legacies to his brothers and sisters, gives a *fee* by implication, as well to the *grandson* as to the *son.*

The *introductory clause* of a will evincing the intent of the testator to dispose of all his worldly estate, has not the effect to enlarge the estate devised, unless the words of disposition in the *clause of devise* are connected in terms or sense with the introductory clause, and import more than a mere description of the property.

APPEAL from chancery. *Jacobus Barheydt* and others, heirs at law of *John I. Barheydt,* filed a bill in chancery for the *partition* of certain premises, which had been devised by the ancestor to his *grandson John,* the son of his son *John,* the appellant in this cause; the complainants below contending that the devise to the grandson gave a mere *life estate,* and that the devisee having died, the property had descended to the heirs at law of the testator. The ancestor, on the 29th March, 1808, made his last will and testament, whereby, after declaring his intent to *dispose of such worldly estate* as he had been blessed with, his just debts being first thereout paid and satisfied, proceeded as follows : " I give, demise and dispose of the same in the following manner and form. First, I give and bequeath to my oldest son *Jacobus* the brick house, &c. *Item.* I give and bequeath unto my son Jerone the meadow, &c. ;" and then followed the clause upon which the question in this case arose, in these words: " *Item.* I give and bequeath unto my son *John* the *upper just* " *half* of my farm lying about six miles west of the city of " Schenectady, where my said John now lives. *Item.* I give " and bequeath unto *John,* son of my son *John,* the *lower part* " *of said farm* where my son John now lives; but my son must " give *out of said estate* to my daughter *Mary* £100 ; also my " daughter *Alida* £100 ; also to *Helena,* daughter of my daugh-

Barheydt *v.* Barheydt.

"ter Mary, £100 ; also £200 unto my " *son Henry.*" He then proceeded as follows : " *Also*, I give and bequeath unto my son Henry my pasture, which I purchased of, &c. ; also, my son *Jacobus* must pay unto my son Henry *out of my estate bequeathed to him*, £200. The whole of the above payments to be made by my son *John* and Jacobus, shall commence by the term of four years after my decease." John, the *grandson*, died in 1817, under the age of twenty-one years, unmarried and without issue, leaving his *father*, the appellant in this case, him surviving. The *testator* died in 1813, leaving four sons and two daughters him surviving. In 1826, the bill in this cause was filed. John S. Barheydt, the appellant, put in an answer, insisting that by the will *an estate in fee* in the premises of which partion was sought, was given to the *grandson* of the testator, and that, on the death of the grandson, the property descended to him as the heir at law of his son.

The cause was submitted to the CHANCELLOR on the pleadings and proofs, and the following opinion was delivered by him :

" From the language of the whole will, when taken in connection with the testimony as to the manner of occupation, I think the testator intended to give the whole of the five tracts in the devises to his son John S. and to the grandson, by the description of " my farm lying about six miles west of the city of Schenectady, where my son John now lives." John S. is therefore entitled to the whole of the upper half of the farm, as composed of the five tracts, under the direct devise thereof to him by the will ; but as the lower half of the farm was devised to the grandson without any words of limitation to create a fee, and there was no legacy or other charge upon the devisee personally, in respect of the estate or property devised to him, the law is well settled that he only took an estate for life in the lands devised, and *that half* of the farm on his death belonged to the general *heirs* of the testator by descent, as property undisposed of by the will. *See Jackson* v. *Bull*, 10 *Johns. R.* 149. *Jackson* v. *Embler*, 14 *id.* 198. The same difficulty exists as to the devises to some of the children of the testator, and perhaps to all the devi-

sees, as the devises to Henry and Jerone are not subject to any charges whatever, and the legacies charged upon the shares of Jacobus and John S. are directed to be paid by them *out of the estate* devised to them respectively. This leaves it at least doubtful whether the devisees are either of them charged with any thing personally within the meaning of the rule. But as no such questions are raised by the pleadings, and the original devisees are still living, except Henry, it is not necessary to pass upon their respective rights in this suit. There must, therefore, be a decree for partition of the lower half of the farm devised to the grandson for life, among the heirs of the testator, or those who have succeeded to their rights respectively;" and a decree was made accordingly. From which decree *John S. Barheydt,* the defendant below, appealed to this court, where the case was argued by

*J. Rhoades & M. T. Reynolds,* for the appellant.

*S. Stevens,* for the respondents.

*Points for the appellant :*

I. John I. Barheydt, in and by his will, devised the premises in question *in fee* to his grandson John, the son of the appellant.

Cases as to introductory clause, and the effect of the word *estate* — Co. *Litt.* 345, § 649. 2 *Preston on Estates,* 200. *Cruise's Dig. tit.* 38, *ch.* 9, 11. *Ibbetson* v. *Beckwith, Cas. Temp. Talb.* 157. *Frogmorton* v. *Holiday,* 3 *Burr.* 1618. *Hogan* v. *Jackson, Cowper,* 299. *Smith* v. *Coffin,* 2 *H. Black.* 444. *Waring* v. *Middleton,* 3 *Dessaus.* 251. *Finley* v. *King's Lessee,* 3 *Peters,* 379. *Morrison* v. *Semple,* 6 *Binney,* 94. *Earl* v. *Grim,* 1 *Johns. Ch. R.* 494. *Jackson* v. *Babcock,* 12 *Johns. R.* 389. *Jackson* v. *De Lancey,* 13 *id.* 538. *Jackson* v. *Housel,* 17 *id.* 281. *Baylis* v. *Gale,* 2 *Vesey,* 48. *Johnson* v. *Kernan,* 1 *Rolle's Abr.* 834. *Duke of Bridgwater* v. *Bolton,* 8 *Vesey,* 604. *Lane* v. *Hawkins,* 2 *Show.* 388. *Barry* v. *Edgworth,* 2 *P. Wms.* 523.

Cases as to the *charge* upon the estate devised—*Wellock* v.

Barheydt *v*. Barheydt.

*Hammond, Cro. Eliz.* 204. *Collier case,* 3 *Coke, pt.* 6, *p.* 16. *Mary Portington's case,* 5 *id. pt.* 10, *p.* 41. *Read* v. *Hatton,* 2 *Mod.* 25. *Doe* v. *Fyldes. Cowp.* 833. *Moore* v. *Price,* 3 *Keb.* 49. *Reeves* v. *Gower,* 11 *Mod.* 208. *Ackland* v. *Ackland,* 2 *Vernon,* 687. *Freak* v. *Lea,* 2 *Show.* 38. *Doe* v. *Richards,* 3 *T. R.* 356. *Doe* v. *Holmes,* 8 *id.* 1. *Goodtitle* v. *Maddern,* 4 *East,* 496. *Jackson* v. *Merrill,* 6 *Johns. R.* 185. *Jackson* v. *Martin,* 18 *id.* 31. *Fox* v. *Phelps,* 17 *Wendell,* 393. *Spraker* v. *Van Alstyne,* 18 *id.* 200, *in error. Also* 1 *R. S.* 748, § 1, 2 ; 2 *id.* 57, § 5 ; *Revisers' Notes to* 1 *R. S.* 748, § 1, 2, 3, *at p.* 89 *of ch.* 1, *pt.* 2.

II. Upon the death of the testator's grandson John, an infant, unmarried and without issue, in 1817, four years after the will took effect by the testator's death, his real estate, including the premises in question, descended in fee to his father, the appellant. 1 *R. L. of* 1813, *p.* 53, § 3, *sub.* 3.

*Points on the part of the respondents :*

I. A devise without any words of limitation or inheritance, and without charging *the devisee personally* with the payment of any money in respect of the estate devised to him, passes only an estate for life to the devisee.

II. John Barheydt, the grandson of the testator, took only an estate for life under the devise in question. 1. There are no words of inheritance or limitation in the devise. 2. Nor is there any personal charge upon the devisee, (the grandson) in respect of the estate devised to him, or any charge whatever upon him.

III. There is no introductory clause in this will which can extend the legal import of the words used in the devising clause in question. 1. Where the legal *import* of the words used in the devising clause is sought to be extended by the introductory clause, it is not only necessary that the introductory clause in the will should express an intention in the testator to dispose of his whole interest in his estate, but the words of disposition in the clause of devise must be connected *both in terms and in sense* with the introductory clause, *and must import more than a mere*

*description of the property devised.* 2 *Preston on Estates,* 87, 88, 192, 193. "*My manor, or all my manor of Dale, my farm, or all my farm that I bought of A., or on which my son John lives, or my estate in the occupation of A.*" and words of the like nature, are mere words of description of the property de⁻ vised. *Id.* 120. *All my estate, or all my interest, or all my title, or property, in my farm, or manor, &c.,* are words which import more than a mere description of the thing devised ; they indicate the quantity of interest which the testator intends to dispose of in the property devised. 2. In the will now under consideration, there is no connection between the introductory and the devising clause to the testator's grandson John, nor do the words used in the devising clause import any thing more than a mere description of the land devised. It is the uniform unbro- ken rule, that by such a devise a life estate only passes to the devisee. 2 *Preston on Estates,* 192, 193, 202, 203. *Denn* v. *Gaskin, Cowp.* 657. *Frogmorton* v. *Wright,* 3 *Wils.* 414. *Doe* v. *Allen,* 8 *T. R.* 497, 502, 503.

After advisement, the following opinion was delivered :

By Chief Justice NELSON. The point in this case turns mainly upon the devises to John the *son,* and John .the *grandson,* and involves the question what quantity of interest the grandson took in the moiety of the farm devised to him—whether an *estate for life,* or an *estate in fee?* If the latter, as he died without issue, and the estate coming from his paternal ancestor, it would go to his father, the appellant, under the third canon of descents ; but if he took only a life estate, it must descend to the heirs of the testator.

The general rule is undisputed, that a devise to A. without words of limitation, such as, *and to his heirs,* carries with it only an estate for the life of the devisee. It was settled in ana- logy to the principles that govern the limitation of estates by deed at common law, which was the elder mode of transferring titles ; but with this difference, that while in respect to deeds,

Barheydt *v.* Barheydt.

the rule was uniform, and the fee never permitted to pass without words of inheritance ; in regard to wills, they being often the production of an unskilful draftsman, upon the emergency of the occasion, it was held that an intent *might* be inferred from other provisions and expressions, supplying the want of such words.

The parts of the will that may properly be relied on to raise this intent here, are *the introductory clause,* and *the provision for the payment of the legacies.* Comparing the language of this will with the cases that we were referred to by the counsel for the respondents on the argument, in which the influence of these introductory words upon the interpretation of wills was discussed, and some general principles laid down in respect to them, I am inclined to think no controlling effect can consistently be given to them. They are often words of course, and as was truly said, are not inappropriate, even where the testator intends giving but a part of his interest. They should in some way be connected in the body of the instrument or otherwise, with the more important devising clause, in order to have the effect of enlarging the estate. I am unable to perceive such connection here, within the principle or spirit of the cases.

But the words charging the payment of legacies deserve more consideration. In respect to them, it has been long settled that a condition or direction imposed on a devisee to pay a sum of money, enlarges the devise to him, without words of limitation, into an absolute estate in fee. *Cro. Eliz.* 204. *Cro. Jac.* 599. *Willes,* 138. *Cowp.* 356. 3 *T. R.* 356. 5 *id.* 13. 5 *East,* 87. 2 *Powell, ch.* 19, *Jarman's ed.* The ground of this rule is, that unless the devisee were to take a fee, he might in the event be a loser by the devise, since he might die before he had re-imbursed himself the amount of the charge upon him ; and the rule applies to every case where a loss is possible. *Collier's case,* 6 *Rep.* 16, *a. Cro. Eliz.* 379. 2 *Mod.* 26. *Willes,* 140. Where the sum is charged *exclusively* upon the land, the rule is not generally applicable, as then the devisee cannot sustain loss ; the land only can be resorted to to raise the charge. In some cases,

the devisee is not only made *personally* liable, but the *estate* devised is also charged for better security ; and the failure to mark this distinction has sometimes led to confusion, and apparent contradiction in the decisions. The same remark may be made also of the failure to discriminate between a charge *on the land generally*, and on the *particular estate* devised. In the former case it attaches to the land, and follows it into whosesoever hands it may pass ; in the latter, the lien terminates with the estate devised, which may be short of a fee. Now, in this case, the charge is both upon the estate devised, and upon John the son, for the legacies are to be raised *out of it* by him. " *My son John must give out of said estate;*" and again, " *the whole of the payments to be made by my son John,*" &c. Here the *fund* is designated, as well as a *personal liability* imposed. The words are much stronger than those in *Doe ex dem. Stevens,* v. *Snelling,* 5 *East* 92, which were as follows : " after having thereout paid and discharged all my just debts and funeral expenses ;" also, " subject to the payment thereout of all the aforesaid legacies ;" and which were held clearly sufficient to pass the fee, in the absence of words of inheritance. Other cases might be cited, but the above contains a full exposition of the doctrine, and is a sufficient authority for the conclusion, that John the son took the fee of the *upper half*, by reason of being personally liable to pay the legacies.

This brings us directly to the question first stated, namely, whether the grandson also took the *fee* of the *lower half* of the farm. It must be admitted that he was not personally liable, as the payment of the whole amount is imposed on the father ; but it is imposed upon him in respect to both estates devised, the *lower* as well as the *upper* half of the farm. The property is designated by the testator as *my farm*, the one half of which he first gives to the son, and then the other to the *grandson*, and adds, " but my son John must give *out of said estate*, that is, out of the farm just devised, to my daughter," &c. This appears to be the plain import of the clause as derived from a careful attention to the words and their collocation. The other construction

would be a very narrow and straitened one, that is, to limit the term *said estate,* in the connection found, to the part of the farm previously devised to the son ; it might with more propriety be confined to the other part, as that is the last antecedent. The *lower half* then, I have no doubt, is subject to a moiety of the legacies, and constitutes a fund to which the legatees might have resorted for payment ; and out of which the father might probably have reimbursed himself, had his son not died and he had advanced the whole himself.

But the charge upon the land *exclusively,* as we have seen, will not generally work an enlargement of the devise into a fee. The case is peculiar, and I think without a parallel in the books. The grandson must have been quite young at the date of the will, which was in 1808 ; he died in 1817, under age. The two moieties of the farm are devised in the same words, and legacies to the amount of $1,200 are charged upon the whole, and also upon the person of the father in respect to the whole. I may be wrong, but I have not been able to resist the conclusion, that this peculiar arrangement, and difference in personal liability is attributable to the relation of father and son, and the tender years of the latter ; that in truth the charge was wholly thrown upon the father, not because it was intended the whole should come out of him, but because he was most fit and competent to see it paid and have the property disencumbered, and that for this purpose the father was put in the place of the son, and made personally liable both in respect to his own and his son's share ; and that no distinction existed in the mind of the testator as to the interest intended to be passed in the several parts of the farm.

There is another view of the case which goes far, in my judg-ment, to confirm this conclusion upon a principle laid down by the court in *Loveacre* v. *Blight, Cowp.* 356, where Lord Mansfield says, if a man devise lands to another, paying *thereout* £100, or any other gross sum, though he adds no words of limitation, yet the devisee shall have a fee. In short, he observes, wherever any thing is directed to be done which, strictly speak-

ing, an estate for life only may not be sufficient to answer, the court will imply a fee.   The same rule is also stated in *Doe, ex dem. Stevens* v. *Snelling,* before referred to, particularly by Lawrence, J. p. 96.   After laying down the general rule, that if the person is charged he must take the fee, he observes, it is the same thing if such an indefinite estate be given to one, and the debts are to be paid *out of the estate given* to the devisee, he must also then take the fee : for otherwise the estate may not be sufficient to pay the debts.   2 *Powell,* 388, 389, 394, *Jarm. ed.* Now apply this principle to the words of the present will :   The several legacies are to be paid out of the estate devised ; suppose the grandson takes but a life estate, what security is there that the fund would be sufficient to enable the father to discharge the duty imposed upon him, the payment of \$1,200 ?   The charge might fall wholly upon the *upper half,* by the termination of the life of the grandson.   I admit the force of this view, as well as my opinion upon the case, depends upon the construction that the legacies are charged upon both estates devised in the farm ; but I am so well satisfied of this, that I am willing to rest the whole case upon it.

My conclusion therefore is, 1. That the legacies are a personal charge upon the testator's son John, and hence he must take the fee in his share ; 2. That he is made personally liable in respect to the estate devised in the entire farm, the *lower* as well as the *upper half,* on account of the minority of his son ; and that no distinction can consistently be made in respect to the quantum of interest in the two devises ; and 3d. That each devisee must take a *fee,* in order to enable the father to discharge the duty imposed upon him by other portions of the will, namely, the payment of the legacies, as they are charged upon both interests devised.

I am therefore of opinion that the decree of the chancellor ought to be reversed.

All the members of the court, with but one exception, concurring in this opinion, the decree of the chancellor was accordingly REVERSED.