HARVEY vs. OLMSTED.

Where, by a will made prior to the revised statutes, lands are devised in general terms without words of limitation or inheritance, the devisee takes a life estate only. And such introductory words as these—"I order and direct my real and personal estate to be divided and distributed as follows," do not enlarge the devise into a fee.

A charge, to carry a fee by implication, where the devise is without words of limitation, *must be upon the person of the devisee in respect to the lands devised.* Where this exists, it gives to the devise the character of a purchase.

A testator, by his will made in 1821, gave a part of his real estate to his wife during her widowhood, and after her decease to two of his children. To his son Nathaniel he gave two parcels, one designated in the will as the Powers lot, the other as the *mountain lot.* To another son he gave a legacy of $1000 to be paid out of his personal estate, if sufficient after paying debts and other legacies, but if not sufficient, then to be paid in land " from the Powers lot, so called." There were no words of inheritance in any part of the will. Introductory to all the devises and bequests were these words: "I order and direct my real and personal estate to be divided and distributed as follows." In the concluding part the testator declared, that in case any dispute should arise upon the will, the same should be referred to three men, to be chosen for that purpose, who should " declare their sense of the testator's intentions, unfettered by law and the niceties of legal construction." *Held,* that Nathaniel took only a life estate in the mountain lot.

EJECTMENT, brought in the supreme court by Anna Olmsted against Asa Harvey, to recover an undivided fourth of fifty acres of land known as the mountain lot, situated in the town of Austerlitz, county of Columbia. The cause was tried at the Columbia circuit, before WHITING, circuit judge, in October, 1846, when a verdict was directed for the plaintiff subject to the opinion of the supreme court on a case, with leave to turn the same into a bill of exceptions, containing the following facts:

The plaintiff claimed as one of the children and heirs at law of Nathaniel Olmsted, sen. The defendant claimed as the grantee of Nathaniel Olmsted, jun., who died in 1835, and who claimed the premises under the will of Nathaniel Olmsted, sen. The question was whether a fee or only a life estate in the premises passed by that will.

Nathaniel Olmsted, sen. died in 1821, having first made his last will and testament, which, after directing the speedy payment of the testator's debts, proceeded as follows :

" *Second.* I order and direct that my real and personal estate be divided and distributed as hereinafter described, which is as follows, viz. : I give and bequeath unto my beloved wife, Sylvia Olmsted, the use and occupancy of the home farm (so called) containing about one hundred acres, with the buildings thereon, as also she, the said Sylvia Olmsted, to have the use and occupancy of the Bartlett lot (so called) which described lands as aforesaid, are to remain in the possession of the said Sylvia Olmsted, so long as she remains my widow, and no longer. But at the decease of the said Sylvia Olmsted, the above described lands and buildings, are to be equally divided between my sons. Nathaniel Olmsted, jun. and Joseph Washburn Olmsted. I give and bequeath to my son, Nathaniel Olmsted, jun. the lot of land, that I purchased of Jacob Powers, containing fifty acres or more, and he the said Nathaniel to come into possession of the same immediately after my decease. *I also give and bequeath unto my son, Nathaniel Olmsted, jun. the mountain lot of land (so called,) containing about fifty acres, and the said Nathaniel to come into possession of the same immediately after my decease.*

" I give and bequeath to my son, Joseph Washburn Olmsted, one thousand dollars to be paid to him when he arrives to the age of twenty-one years; the said thousand dollars to be paid out of my personal estate should there be a sufficiency left after the sums bequeathed hereafter to Anna Olmsted and Mary Olmsted. I give and bequeath to my daughter Anna Olmsted, two hundred dollars to be paid to her out of my personal property within one year from my decease.

"I give and bequeath to my daughter Mary Olmsted, three hundred dollars to be paid out of my personal property in one year-from my decease. I order and direct, that after my decease, and legal estimation shall be made of personal estate, if said personal estate (after deducting all my debts and the legacies to Anna Olmsted and Mary Olmsted as aforesaid,) shall not amount to the sum of one thousand dollars, being the sum by me bequeathed to Joseph Washburn Olmsted; then in that case the said Joseph Washburn Olmsted, shall be paid in lands from the Powers lot so called, to be appraised by my executors hereinafter named, so as to make to him the sum of one thousand dollars.

"And I do most sincerely and solemnly enjoin it upon my executors, hereinafter named, to see and take care that this my will be religiously fulfilled in all respects according to the true intent and meaning thereof. But in case any dispute should arise respecting any gift, bequest, matter or thing contained in this instrument, then in that case, the same shall be referred to three impartial and intelligent men of the town of Canaan, known for their honesty and integrity, each party choosing one, and those two choosing a third, which three men thus chosen shall, unfettered by law and the niceties of legal construction, declare their sense of the testator's intentions, and their decision to be binding on the parties, the same as would be in any court of record in the United States."

The personal estate of the testator, after paying his debts and the legacies to Anna and Mary Olmsted, was not sufficient to pay the legacy of $1000 to Joseph Washburn Olmsted, there being a deficiency of $609,69, which therefore according to the will became payable out of the fifty acres called in the will the Powers lot. Nathaniel Olmsted, jun. conveyed the *mountain lot*, the premises in question, to the defendant in 1826.

The supreme court gave judgment for the plaintiff, (*see* 1 *Barb. Sup. Court Rep.* 102,) and the defendant, having had a bill of exceptions duly signed and sealed, brings error to this court.

*K. Miller,* for the plaintiff in error. I. The testator having expressly ordered and directed that his real and personal

estate should be divided and distributed as in and by his will was directed, passed a fee to the appellant's grantor in the premises. (*Jackson* v. *Merrill*, 6 *John*. 191; *Carr* v. *Jennerett*, 2 *McCord*, 66; *Morrison* v. *Semple*, 6 *Binn*. 94; *Hungerford* v. *Anderson*, 4 *Day*, 368; *Den*, *ex dem. Moor*, v. *Mellen*, 5 *T. R.* 562; *Watson* v. *Powell*, 3 *Call*, 306; *Brown* v. *Wood*, 17 *Mass. R.* 72; *Fox* v. *Phelps*, 20 *Wend*. 445.)

II. There are no words of perpetuity used in any part of the will, and no devise of any reversionary interest or estate. As the testator made no devise of any reversionary interest in any of the lands, it is evident he supposed he was devising all his real estate. (18 *Wend*. 207, *per Chancellor*.)

III. The devise to Nathaniel Olmsted, jun. and Joseph W. Olmsted, of the home farm and Bartlett lot after the decease of the widow, (who had a qualified life estate therein,) being a remainder interest, shows clearly that the testator intended that they should take a fee estate. (*Butler and wife* v. *Little*, 3 *Maine R.* 239; 2 *Prec. of Wills*, 291, 2; 6 *Bac. Abr.* 16, *C. Phil. ed. of* 1846; *Oatis* v. *Cook*, 3 *Burr*. 1688; 3 *Bing*. 3, 13; 1 *Ves. sen.* 491; *Gall* v. *Esdaile*, 8 *Bing*. 323; *Spraker* v. *Van Alstyne*, 18 *Wend*. 204.)

IV. The devises to Nathaniel Olmsted, jun. of the Powers and mountain lots passed a fee, as the Powers lot is expressly charged with the deficiency that should or might exist to pay the legacy of $1000 to Joseph, after the application of his personal estate to his debts and other legacies; (which deficiency upon settlement was $609,69.) (*Spraker* v. *Van Alstyne*, 18 *Wend*. 200; *per Chancellor*, 204; *per Senator Dickinson*, 209; *Cook and others* v. *Holmes and wife*, 11 *Mass. R.* 528; 8 *id.* 3; 1 *Munf.* 589; 6 *Binn*. 94.) The charge of the $1000 legacy to Joseph was a direct charge upon the devisee of the estate specifically devised to him, so as to create a fee by implication. (*Doe* v. *Richards*, 3 *T. R.* 356; *Denn*, *ex dem. Moor*, v. *Mellen*, 5 *id.* 562; *Doe* v. *Allen*, 8 *id.* 499; *Jackson* v. *Bull*, 10 *John*. 153; *Heard* v. *Horton*, 1 *Denio*, 166.)

V. The estate given to Joseph, and which the executors were contingently authorized to set off and convey to him in

satisfaction of his legacy, must be deemed to be a fee, and which raises an implication that the testator intended that Nathaniel should have the same estate. (*Cook, &c.* v. *Holmes,* 11 *Mass. R.* 528.)

VI. The whole tenor, and especially the concluding clauses of the will, show that the testator intended that a fee estate should pass to his two sons, and that he did not intend that in the disposition of his property his will or intention should be fettered by the niceties or technicalities of legal construction.

*H. Hogeboom,* for the defendant in error.   I. The devise of the mountain lot, (which is the lot in question,) is wholly without words of inheritance, and is not aided by, or referred to in any other part of the will.   Upon the well established principles of the common law, therefore, prevailing at the testator's death, the devise conferred simply a life estate.   (*Dean* v. *Gaskin, Cowp. Rep.* 657 ; *Jackson* v. *Wells,* 9 *John.* 222 ; *Jackson* v. *Embler,* 14 *id.* 198 ; *Ferris* v. *Smith,* 17 *id.* 221.)

II. The introductory words in the will by which the testator orders and directs his real and personal estate to be divided and distributed as thereafter directed, do not necessarily convey a fee.   (*Doe* v. *Buckner,* 6 *T. R.* 610 ; *Doe* v. *Wright,* 8 *id.* 64 ; *Doe* v. *Allen, id.* 497 ; *Denn* v. *Gaskin, Cowp.* 657 ; *Hogan* v. *Jackson, id.* 299 ; *Wright* v. *Russell, id.* 661 ; *Loveacres* v. *Blight, id.* 352 ; *Roe* v. *Vernon,* 5 *East,* 51 ; *Goodright* v. *Barron,* 11 *id.* 220 ; *Jackson* v. *Harris,* 8 *John.* 141 ; *Jackson* v. *Wells,* 9 *id.* 222 ; *Barheydt* v. *Barheydt,* 20 *Wend.* 576 ; *Wheaton* v. *Andross,* 23 *id.* 452 ; 2 *Taylor's Prec. of Wills,* 292.)   Again, the phraseology expressly refers to the division afterwards spoken of, and is therefore limited by the subsequent words.

III. A fee by implication is not to be deduced from the estates given to the two sons being limited upon a previous life estate to the wife.   (*Hay* v. *Earl of Coventry,* 3 *T. R.* 83 ; *Hackley* v. *Mawbry,* 3 *B. C. C.* 82 ; *Compton* v. *Compton,* 9 *East,* 267 ; *Doe* v. *Clark,* 5 *Bos. & Pull.* 343 ; *Doe* v. *Wright,* 8 *T. R.* 64 ; *Doe* v. *Clark,* 2 *N. R.* 343 ; *Ferris* v. *Smith,* 17 *John.*

221; 2 *Powell on Devises*, 377.) Successive life estates were lawful and were frequently created upon the same property, when this will took effect. Again, this implication, if ever allowable, does not apply to the mountain lot.

IV. A fee by implication is negatived by the description of the premises, or terms employed to designate them. The terms are " the mountain lot of land, *so called*," " the home farm, *so called*," " the Bartlett lot, *so called*," &c. conveying the idea that they were intended only to designate the premises, not the nature or extent of the testator's interest therein. (*Morrison* v. *Semplen, Binney*, 97; *Spraker* v. *Van Alstyne*, 13 *Wend.* 578.)

V. The words " to be equally divided between them," afford no just inference of an intent to pass a fee. (*Jackson* v. *Bull*, 10 *John.* 148; *Jackson* v. *Luqueer*, 5 *Cowen*, 221; *Spraker* v. *Van Alstyne*, 13 *Wend.* 582.) The use of these words is entirely consistent with the division of life estates; they refer probably to a territorial division. They do not go to the limitation of the estate. (*Jackson* v. *Luqueer*, 5 *Cowen*, 221.) They do not affect the mountain lot.

VI. The charge upon the Powers lot does not raise a fee by implication. To raise a fee by implication, the legacy must be charged upon the *person* of the devisee. (*Jackson* v. *Bull*, 10 *John.* 143; *Jackson* v. *Martin*, 18 *id.* 31; *Jackson* v. *Harris*, 8 *id.* 141; *Spraker* v. *Spraker*, 18 *Wend.* 200; *Barheydt* v. *Barheydt*, 20 *id.* 576; *Wheaton* v. *Andross*, 23 *id.* 452; *Doe* v. *Clark*, 5 *Bos. & Pull.* 343; *Fox* v. *Phelps*, 17 *Wend.* 393; *Burlingham* v. *Belding*, 21 *id.* 463.) When the charge or annuity is to be paid out of the lands merely without saying *by whom*, the devisee's estate will not be enlarged. (8 *East*, 141; 8 *Petersd.* 165.) To raise a fee by implication, the charge must also be *absolute* and *not contingent*. (*Merson* v. *Blackmore*, 2 *Atk.* 341; *Doe* v. *Allen*, 8 *T. R.* 497; *Jackson* v. *Harris*, 8 *John.* 141; *Spraker* v. *Spraker*, 18 *Wend.* 200; *Spraker* v. *Van Alstyne*, 13 *id.* 578; *Denn* v. *Mellor*, 5 *T. R.* 558; *Jackson* v. *Bull*, 10 *John.* 148.) The legacy to Joseph is not *necessarily* payable *out of the estate*, devised to Nathaniel, jun.

It may be paid out of the land from the Powers lot without touching the life *estate* of Nathaniel *therein.* (*Barheydt* v. *Barheydt,* 20 *Wend.* 576.) Indeed the payment of the deficiency to Nathaniel was not necessarily *in land* at all; it may properly be by the *avails of the sale.* (*Jackson* v. *Burr,* 9 *John.* 104.) The implication of a fee, (if there be one,) is confined to the Powers lot. It does not extend to the mountain lot. The provisions of the will confine it to the Powers lot; and the books are full of cases showing the impropriety of thus raising an implication upon an implication. (*Spraker* v. *Spraker,* 18 *Wend.* 200; *Spraker* v. *Van Alstyne,* 13 *id.* 578.)

VII. The absence of words of perpetuity or of the devise of any reversionary interest, furnish no sound or legitimate legal presumption of an intent to devise the whole estate. (*Wheaton* v. *Andross,* 23 *Wend.* 452.) To indulge such presumption would be to subvert the unbroken line of English and American decisions, which allow only a life estate, in the absence of words of perpetuity. .

GARDINER, J. According to the terms of the devise, Nathaniel Olmsted, sen., took a life estate only in the mountain lot. Such was the established construction, at the making of this will, of a devise of real estate containing no words of limitation. (6 *Term Rep.* 610; 2 *Preston on Estates,* 188; 20 *Wend.* 580.) It is a familiar proposition that a *testator* is always presumed to use the words in which he expresses himself according to their strict and primary acceptation, unless from the context of the will it appears that he has used them in a different sense. (*Wigram on Wills, Law Lib. vol.* 2, *p.* 11.) The words of this devise, as we have said, import an intent of the testator to grant a life estate only in the premises in question, but it is claimed that the context enlarges the estate to a fee, by showing that such must have been the intention of the testator.

We are referred to the second clause by which the testator "orders and directs that his real and personal estate be divided and distributed as follows." This clause is obviously introduc-

tory to the actual distribution afterwards made by the decedent. It indicates an intention to dispose of his property, real and personal. But this is not enough. There must be an intent and words of disposition. Both must concur in every valid devise. (*Saunderson* v. *Dobson, decided in* 1847, *in Exch. Law Jour.* 249 ; *Doe* v. *Earle, id.* 242.) The clause cannot embrace all the subsequent devises of real property, because a portion is devised to the wife of the testator during her widowhood.

Nor are the introductory words necessarily connected with the disposition of other portions of his real estate to his sons. The estate of the testator in his real property was as much the subject of division as the lands themselves. If he had given a particular tract or farm to one of his sons, and made no disposition of the residue, it would not be pretended that we could extend the gift to other lands, however emphatically the testator should announce his intention to settle all his property by his will. This remark is applicable to the devise in question.

The testator has used language which, according to an unbroken series of decisions, import an intent to give an estate for life. Such is his disposition. To use the language of the introductory clause, he has "divided and distributed" such an interest, and no other, to each of his sons. If the residue of his estate is undisposed of, it presents the ordinary case of a general intention not executed. But it furnishes no reason for departing from the language of the testator, nor any authority to this court in his place to distribute his property for him. (*Barheydt* v. *Barheydt,* 20 *Wend.* 580, 581.)

There is no foundation for saying that Nathaniel took a fee in consequence of the legacy of $1000 being a charge upon him in respect to the lands devised to him by the testator. A charge to create a fee by implication, must be upon the person of the devisee in respect of the lands devised. Where it exists, it takes from the devise the character of a gift, and turns it into a purchase. The mode of compensation prescribed by the testator, may be by the payment of debts or legacies, or by the relinquishment of a right. To guard the devisee under such circumstances against loss, according to the presumed intent of

the testator, the estate is turned into a fee. (*Spraker* v. *Van Alstyne*, 18 *Wend.* 205, *and cases cited ; Jackson* v. *Ball*, 1G *John.* 143 ; 20 *Wend.* 581.) In this case the legacy to Joseph W. Olmsted is made a charge upon the personal estate, and that failing, upon the Powers lot. At most the charge upon this land is contingent. There is no obligation imposed upon Nathaniel in respect of the devise to him of the mountain lot; on the contrary, in default of personal property, the legacy is to be paid in land other than the premises in question, to be appraised by the executors. (20 *Wend.* 582, *and cases cited ;* 8 *John. R.* 142 ; 18 *Wend.* 205, *and cases cited.*) We think, therefore, that the decision of the supreme court should be affirmed.

Judgment affirmed.