SAMUEL LYNES and others, Executors, &c., Appellants, v. EDWARD M. TOWNSEND and others, Respondents.

It seems that a devise of real estate, universal in its terms, would carry after-acquired lands without any language pointing to the period of the testator's death.

But in the absence of unlimited terms in the will, there must be language which will enable the court to see that the testator intended to operate upon real estate which he should afterwards purchase.

A declaration in the will that he "appoints his executors for the full and final settlement of his estate, whether real or personal"—where he possessed real estate at the time of making the will—is not to be deemed a sufficient indication of his intention that the will should operate upon real estate subsequently acquired.

*A. W. Bradford*, for the appellants.

*C. O' Conor*, for the respondents

DAVIES, J. The question for adjudication in this action is, whether real estate, located in the State of New York, acquired by a testator after the making of his will, descended to the heir-at-law, or passed to the executors, by the terms of the will.

This action was commenced by the executors of Sanford Coley, deceased, to obtain a proper construction of the will, and the determination of that question. The judge who tried the case, without a jury, found the following facts :

That the said Sanford Coley died on the 20th day of August, 1857, having, *on the 14th day of July*, 1845, made and published in his own handwriting the will set forth in the complaint. At the time of his decease he was an inhabitant of, and domiciled at, Norwalk, in the county of Fairfield, and State of Connecticut, and not elsewhere. His will was admitted to probate by the probate judge of the district of Norwalk aforesaid, on the 20th day of September, 1857; letters testamentary thereon were thereupon issued by said probate judge, to the plaintiff Samuel Lynes, as executor under the will, who then resided at Norwalk aforesaid. Tertullus D.

Stewart, one of said executors named in the will, died before the testator. On the 28th of October, 1858, the will was admitted to probate as a will of personal estate, by the surrogate of the county of New York, and recorded as a will of real estate, on the 22d day of November, in the same year. That on the 28th of October, 1858, letters testamentary were issued by said surrogate to said Samuel Lynes; and on the 6th day of December, 1860, letters were issued to George Greer, in conjunction with said Lynes.

That said Sanford Coley, at the time of his death, was possessed of certain assets in the county of New York, and was also seized in fee of certain real estate in the State of New York. That the title to the parcel of real estate described in the complaint as number one, in the city of Brooklyn, he acquired on the 6th day of December, 1852; and the title to the parcel of real estate described in the complaint as number two, in the county of Westchester, be acquired on the 4th day of June, 1857.

That the personal estate of the testator was, at the time of his death, sufficient to pay all his debts, and all the legacies given by the will. That the testator was never married, and the defendant, Belinda Rockwell, now the wife of Edward M. Townsend, was the only heir-at-law and next of kin of the testator at the time of his death, and then a resident and inhabitant of the State of New York. By the will the testator disposed of his estate as follows:

" In case I should depart this life before marriage, the following is my last and only will, and that the same may be carried into effect according to my wish, as hereafter expressed, I hereby appoint my present partners, Mr. George Greer and Tertullus D. Stewart, and also Mr. Samuel Lynes of New York, of the firm of Booth & Lynes, Maiden Lane, my executors, for the final and full settlement of my estate, whether personal or real. To my niece, Belinda Rockwell, the daughter of my sister and Eli Rockwell, I give and bequeath [certain real property in Mobile, particularly describing the same], the rents and profits accruing from the same to be paid for her use annually during her natural life, and after

her death to her heirs; and should it be deemed advisable to dispose of said property after her maturity, (twenty-first year of age), it must be invested again safely and applied as before stated. I also give and bequeath to my said niece, to be paid out of moneys due me from the firm of Coley & Stewart, or otherwise, the sum of $30,000 ; the sum to be invested under the direction of my said executors, and the annual profits or interest to be paid to her father Eli Rockwell, or her uncle George Rockwell, for her use and support, up to the time of her twenty-first birthday, her father and uncle above named to have the receiving and control of the income derived from the real estate also. To my cousins [naming four] (being the children of my uncle and aunt Benjamin Lynes), I bequeath each the sum of $10,000, the note of Benjamin Lynes for $5,000, to be a part of the amount paid to Stephen C. Lynes, and Samuel Lynes' own note for $5,000, to be part of the amount received by him. To Timothy B. Lynes, I give and bequeath the sum of $10,000. To George Greer, herein named as an executor, I give and bequeath the sum of $10,000. To Tertullus D. Stewart, also named as executor, the sum of $5,000. Also to my brother-in-law, Eli Rockwell, I give and bequeath the sum of $5,000. To my aunt, Sarah Lynes, I bequeath $5,000,— her own note for $781 and odd cents to be paid in part. To my uncle and aunt Thomas Boughton, I give and bequeath the sum of $5,000 between them. To the children of Eunice Boughton that was, now I think married to a man of the name of Fairchild, I give and bequeath the sum of $3,000, and to her son George, the eldest, individually, I bequeath the sum of $2,000. To the children of Rachael Rockwell, wife of Edwin Rockwell, I give and bequeath the sum of $3,000, and to the children of the late Daniel C. Boughton, I give and bequeath the sum of $3,000, and to my friend, Sophia B. Isaacs, I give and bequeath the sum of $5,000, and to the Presbyterian Society of Ridgeway, Conn., I give and bequeath the sum of $5,000. To the Protestant Female Benevolent Society of Mobile, Ala., I give and bequeath the sum of $5,000. *And should there be a further sum,* after paying all the bequests herein

named, *I leave it* to my executors to be divided among the parties herein named *pro ratio*, or to give *it* to such charitable objects or societies as they may select; giving my said executors full power to act as they may think most for the interest of all the parties named herein." And as conclusions of law, the court found that the testator died intestate as to the real estate described in the complaint; that he died intestate as to all other real estate in this State, acquired subsequently to the publishing of his will on the 14th day of July, 1845, as above found, and the same descended to the defendant, Belinda Rockwell, wife of Edward M. Townsend, who was, at his death, his only heir-at-law; that the plaintiffs, as the executors of the testator, acquired by the will no interest in the aforesaid real estate, or power over it.

Judgment was entered in accordance with these findings, and on appeal was affirmed at the General Term. The plaintiffs now appeal to this court.

Before proceeding to the consideration of this particular case, it will be useful to advert to several established and well-known canons applicable to the construction of all wills.

1. That the *lex loci rei sitae* applies and governs in the construction of all wills of real estate, while the *lex domicili* governs in reference to wills of personal estate.

2. That the heir is not to be disinherited without an express devise or necessary implication, such implication imputing not natural necessity, but so strong a probability that an intention to the contrary cannot be supposed.

3. That merely negative words are not sufficient to exclude the title of the heir or next of kin. *There must be an actual, valid and effectual gift, to some other definite object.*

4. That a devise of lands will not operate upon lands purchased after the execution and publication of the will, unless, subsequent to such purchase and seizin, the devisee republish his will, with the requisite solemnities. And, consequently, a will of real estate was to be regarded as speaking from the time of its execution and publication, while, in relation to personal estate, it was to be deemed as speaking from the death of the testator.

The first rule is so familiar and well recognized, that it is unnecessary to refer to authorities to sustain it.

As to the second, see 2 Jarman on Wills, 741; 1 id., 465; *Clache's Case* (Dyer, 330, b.); *Cambee* v. *Hill* (2 Str., 969); *Sullinee* v. *Wichett* (1 Wils., 105); *Roe* v. *Wichett*, upon same will (Willes, 303); *Doe* v. *Wilkinson* (2 D. & E., 209); *Doe* v. *Dring* (2 Man. & S., 448). In *Wilkinson* v. *Adam* (2 Ves. & Bea., 466), Lord Eldon says: "With regard to that expression, 'necessary implication,' I will repeat what I have before stated, from a note of Lord Hardwicke's judgment in *Coriton* v. *Hellier* (2 Cox, 340), that in construing a will conjecture must not be taken for implication, but necessary implication means, not natural necessity, but so strong a probability of intention, that an intention contrary to that which is imputed to the testator cannot be supposed." (*Devon* v. *Miller*, 5 D. & E., 558.) And in this case, Grose, J., re-iterates the rule, "that the heir-at-law is not to be disinherited unless the intention to disinherit him can be collected from the words of the will."

And Lord Kenyon said: "Whatever a conjecture may be (and privately speaking, I think the devisor meant to give an estate in fee to his wife), we are not at liberty to follow these conjectures." (*Hayden* v. *Stoughton*, 5 Pick., 528, 536; *King* v. *Wauchopse*, 1 Bligh, 25, 26; *Scanlen* v. *Jackson*, 2 Wend., 13; *Van Kleck* v. *The Reformed Dutch Church*, 6 Paige, 600.) In the latter case, Chancellor Walworth says: "The right of the heir-at-law does not, in either case, depend upon the intent of the testator to give him that part of the estate, but upon the principle that the heir is entitled to every part of the estate which the testator has not shown a clear intention of giving to some other person, who, in the event that has occurred, is capable of taking the estate thus intended for him by the testator. * * * The right of the heir, devolving upon him by operation of law, cannot be impaired by vague surmises of what the testator would or ought to have done if he had foreseen that the disposition he had made of his estate might be declared invalid or ineffectual. An heir can only be disinherited by express words or necessary

implication." (See also *Delafield* v. *Parish*, 25 N. Y., 9; *Crowningshield* v. *Crowningshield*, 2 Gray, 526.)

Fourth. The statute of wills of 32 Henry VIII, ch. 1, only authorized persons "having" lands to make disposition of them by last will and testament, and, therefore, it has been uniformly holden that only such lands passed as the testator had at the time of the execution and publication of his will. (*Jackson* v. *Holloway*, 7 Johns., 894; *Jackson* v. *Potter*, 9 id., 312.) Such continued to be the law in this State until the revision of the laws in 1830, when the 5th section of article 1, title 1 of chapter 6, relating to wills and testaments, declared that "every will that shall be made by a testator, in express terms, *of all his real estate*, or in any other terms denoting his intent to devise *all his real property*, shall be construed to pass all his real estate which he was entitled to devise at the time of his death." The revisers, in reporting this section to the legislature, say: "New—intended to guard against the questions that arise when a testator acquires property after making his will. There exists a distinction, purely technical, between the effect of general terms in a devise of real estate, and in a bequest of personal property. A bequest of 'all a man's personal estate,' passes all the property of that description owned by him at the time of his death; while a devise of 'all his lands, &c.' is confined in its operation to the lands owned by him at the time of the last publication of his will. Yet it is hardly possible to doubt that the intention of the testator was in both cases the same. This distinction, from its very nature, must be unknown to the larger number of those by whom wills are executed, and must, therefore, continue to operate, as it frequently has operated, to defeat the intent of the testator. When a man, after making a will of *all* his property, acquires more, but dies without any alteration of his will, unless he be a well instructed lawyer, it may be safely affirmed that his belief and expectations were that all his property would pass, without reference to the time when it was acquired. Least of all would he probably imagine that a different rule would prevail in disposing of

the two kinds." In 1837, the British Parliament followed in our footsteps, and adopted the same change in the laws. The 21st sec. of the act of 7 Will. IV and 1 Vic., cap. 26, reads thus: "That every will shall be construed, with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will."

In this State the doctrine is firmly established, that in a will of personal estate the testator is presumed to speak with reference to the time of his death. (*Van Vechten* v. *Van Veghten*, 8 Paige, 104.)

We will now proceed to an examination of the text of this will, to ascertain, first, whether the testator, in express terms, disposed "*of all his real estate;*" and, second, whether he used any other terms denoting his *intent* to devise all his real property. If either of these propositions can be affirmatively established, then, in the language of the statute, the will shall be construed to pass all the real estate which he was entitled to devise at the time of his death.

It is apparent, from the reading of this will, that it was drawn *inops consilii*, and it is found as a fact in the case that the will is in the proper handwriting of the testator. This circumstance does not alter the law applicable to it, or the rules of construction which are established, and which must be applied with uniformity. It is to be borne in mind that the real estate in controversy was acquired by the testator, one parcel in 1852, and the other in 1857, and that the will was executed and published on the 14th of July, 1845. Now it will be conceded that the testator does not, in express terms, dispose of all his real estate. It is true, as matter of fact, that he did devise all his real estate, owned by him at the time of the making of his will, to his heir-at-law, and that circumstance raises an intent on his part that she should be the recipient of all his real estate. He is presumed to know the law, that she would take the after-acquired real estate, in the absence of any testamentary disposition of it by him, and this may well explain why he made no change in his

will with respect to his after acquired real estate. He knew that he had disposed of all his personal estate which he might have at the time of his death, and these reasons indicated to him that if he was content with the disposition which the law made of his after-acquired real estate, no change, alteration or addition to his will was called for. Neither are there any other terms used in the will denoting an intent on the part of the testator to devise all his real property. There is no mention of or allusion to any other real property in the will than that given to the heir-at-law. The introductory words of the will containing, the appointment of executors "*for the final and full settlement of my estate, whether personal or real,*" are relied on as denoting an intent to dispose of all the real property of the testator. But the introductory clause of a will, evincing the intent of the testator to dispose of all his worldly estate, has not the effect to enlarge the estate devised, unless the words of disposition *in the clause of devise* are connected in terms or sense with the introductory clause, and import more than a mere description of property. (*Barheydt v. Barheydt,* 20 Wend., 576.)

The words used in the introductory part of this will, are clearly nothing more than a description of the property confided to the care and administration of the executors. named. It is fully answered by the property specifically referred to and disposed of by the will, namely, the real estate, the rents and profits of which were to be paid to the heir-at-law, during her natural life, and the personal estate to be applied by the executor in payment of legacies. After the devise of the real estate specifically described, the testator then gives legacies to various persons and societies, amounting, in the whole, to the sum of $136,000. To his said niece (his heir-at-law), he gave and bequeathed the sum of $30,000, "*to be paid out of the moneys due me from the firm* of Coley & Stewart or otherwise," and as to the other legatees, he gave and bequeathed the various sums given to each respectively, without repeating the source from which the moneys were to be derived for the payment thereof. It is very apparent, from the language used and its juxtaposition, that the testa-

tor intended and expected that the legacies were to be paid out of moneys due to him from the firm of Coley & Stewart, or otherwise, as was the primary legacy. This was the firm in which the testator was a partner, and in it, as is not unusual, the whole of his personal estate was invested. Certain debts due to him from legatees were directed to be deducted from their respective legacies, and the supposition is not unreasonable, that the residue of his personal estate was due to him from his firm of Coley & Stewart. This was another form of expression, indicating that his personal estate consisted of his interest in the assets and property of that firm. We are to bear in mind that it is found as a fact, in this case, that the personal estate of the testator was, at the time of his death, sufficient to pay all his debts and all the legacies given by the will. Keeping all these facts and circumstances in mind, we can understandingly consider the residue clause of the testator's will. He says : "And should there be a further sum after paying all the bequests herein named, *I leave it* to my executors." What does he here leave to them ? "It," that is, the further sum which may be left after the payment of the enumerated legacies. This manifestly contemplates a residuum, something left of a particular thing indicated. And the testator has unmistakably informed us what was in his mind, as the source from which this *further sum* might arise. At the commencement of his disposition of legacies, he informs us of the means or resources provided for the payment of them. They "are to be paid out of moneys due from the firm of Coley & Stewart, or otherwise." He, doubtless, supposed that his debts and legacies would exhaust all his personal estate, yet he did not intend to leave unprovided for the contingency of a residuum. He, therefore, gave *it*, that is, the further sum, or what might remain, to his executors, either to divide it *pro rata* among the legatees, or for them, in their discretion, to give *it* to such charitable objects or societies *as they might select*. This manner of disposition clearly indicates that the testator did not suppose this residuum was of much moment. Whatever it was, it was to be divided *pro rata* among the

named legatees, or, in the discretion of the executors, to be given in general charity. He was providing for a contingency of a very doubtful character, and one which evidently he thought might never arise. Under these circumstances, it would be a most forced construction to give this will, to assume an intention on the part of the testator to give this real estate to his executors, for them to make sale thereof in disherison of the heir-at-law, and for the sole purpose of creating a pecuniary surplus, which he hardly knew what to do with, and with the disposition of which he was quite indifferent. It is not to be predicated, that this language denotes an intent on the part of the testator to devise all his real property. In my opinion, taking the whole will together, the testator clearly had in mind only a further sum, a residue which might remain of the moneys due him from the firm of Coley & Stewart, or otherwise, after the payment of his debts and the specific legacies.

We may infer, from the finding, that there is such a residue, and, therefore, something to which this direction in the will can attach. In *Doe* v. *Wilkinson (supra)*, ASHURST, J., said : "It was competent to the testator to have disposed of the estate in another event which has since happened, but she has not done it, though she probably would have done it had she thought of it. This is the chance which the law gives to the heir-at-law. He has a right to take advantage of the slips and omissions in a will, and we cannot take it from him." Lord ELLENBOROUGH, in *Doe* v. *Dring (supra)*, said : "The rule of law is peremptory that the heir shall not be disinherited, unless by plain and cogent inference arising from the words of the will. * * * We are bound by the terms which he has used, and cannot look beyond them into intrinsic matters for their interpretation." That was a strong case in favor of extending, by construction, the words used in the will. The testator gave to his wife "all and singular my effects, of what nature or kind soever." The testator had a reversionary interest in an estate, and the question was whether or not it passed by the will, and the court held it did not. Lord ELLENBOROUGH

said: "If I were asked my private opinion as to what this testator really meant when he made use of the word [effects], I must suppose that he meant that which his duty prescribed to him, to convey all his property for the maintenance of his family; but sitting in a court of law, I am not at liberty to collect his meaning from matter *dehors*, but only from the expression used on the face of the will." Le Blanc, J., said: "If the court were at liberty to look into extrinsic circumstances, to the nature or comparative value of the real and personal property, or to the situation in which the testator stood with regard to his family, in order to see what disposition of his property he probably intended to make, they would undoubtedly be inclined to say that he must have intended to pass his real estate. But that would be a very dangerous rule to go by. The court seeks the construction in the words alone of the will." There is no principle, therefore, upon which the words used in this will, "further sum," can be construed as denoting an intention on the part of the testator "to devise all his real property." They are inappropriately chosen to convey the idea of any such intention.

These words, as used, in reference to the context, show undisputably that they were intended to designate a sum of money, and not real property. The testator had been giving different "sums," to be paid out of the moneys due to him, and then says, if there should be a further sum, *I leave it* to be divided, first among the parties named as legatees, *pro rata*, then for general charity, in the discretion of his executors. There was no direction or intent expressed in the will to convert any real estate into money. The word "sum," as here used, could legitimately only refer to money. It is often used in wills, and always, as here, in such form as to indicate that it is used in reference to personal estate only.

Being clearly of the opinion that the bequest of a "further sum," to be divided as directed by this will, does not denote any intention on the part of the testator to devise all his real property, we are restrained, as well by the positive declaration of our statute as the general rules applicable to the

rights secured to the heir-at-law, from giving such a construction to this will as to pass by it all the real estate of this testator which he was entitled to devise at the time of his death. The estate in controversy, acquired by him after the execution and publication of his will, consequently did not pass thereby, but descended to his heir-at-law.

The judgment of the Supreme Court should therefore be affirmed, with costs.

DENIO, Ch. J.   I think it highly probable that if the testator had been asked whether he expected his will to operate upon all the property of both kinds which he should own at the time of his death, he would have answered in the affirmative.   Men not familiar with legal distinctions do not usually appreciate the rules which discriminate between the two kinds of property, and the intention of many testators is frustrated by the want of words charging legacies upon the real estate, where they fully designed that they should be paid, if he left sufficient means of any kind to pay them.   We cannot, however, act upon a conjecture, however plausible.   The question is, whether this testator has used language denoting with reasonable certainty his intent to devise all his real property, that is, all of such property as he should have at the time of his death.   The statute contains only the first mentioned expression; and, no doubt, à devise of real estate, universal in its terms, would carry after-acquired lands, without any language pointing to the period of the testator's death.   But where such unlimited terms are not used, there must be words in the will which will enable us to see that he intended it to operate upon real estate which he should afterwards purchase. Now, there is nothing in this will to that effect, unless it be that in which he declares that the appointment of the executors is for the final and full settlement of his estate, whether real or personal.   If he had owned no real estate when he executed the will, I should think that the embracing of that term, when defining the scope of the powers of his executors, would, by great liberality of construction, subject after-acquired lands.   But he did own other real estate, and devised

it to his niece. If that devise had been simple, vesting the estate immediately in possession and control, as well as in interest, so that his executors could have no duties to perform respecting it, the fact of its existence would not, perhaps, have any bearing on the question. But she was not to have the possession, or the uncontrolled disposition, of the rents and profits, until she should come of age. Those rents and profits were, during her minority, to be paid to her father or uncle, to be applied to her use and support. By whom were the rents and profits to be paid to the father or uncle? I think, by the executors; and I presume it was for that reason that they were authorized to appoint trustees, inasmuch as the land devised lay in a distant State. Then the land might be sold after her majority, and the proceeds take the place of the land. If the rule in Shelley's case prevails in Alabama, she took a fee simple absolute, notwithstanding the devise to her heirs, and what is said about selling would be idle; whereas, if that rule is abolished, her heirs took an estate in remainder, with perhaps a power, by implication, in the executors to sell. But whatever may be the effect of this limitation on the power of the executors, we see enough in the disposition of the property to show that the testator might well have contemplated the agency of his executors in the final and full settlement of his estate in that Alabama property.

I agree that the reasons which have induced the English courts, in construing devises, to lean in favor of the heir, do not exist with the same force in this country, where we have no policy which favors the perpetuating of estates in a single male descendant; still, our law of descents points out the succession of real estate in the case of intestacy, and we have no right to break in upon the course of succession, unless we can see, satisfactorily and clearly, that the owner has appointed it differently.

I think the after-acquired land was not devised or subject to a power of sale for the payment of legacies; and that the judgment appealed from should be affirmed.

All the judges concurring, judgment affirmed.