(162 App. Div. 659)

HIRSCH et al. v. BUCKI et al.    (No. 5849.)

(Supreme Court, Appellate Division, First Department.    May 29, 1914.)

1. WILLS (§ 693*)—POWER OF APPOINTMENT—EXECUTION.

Under Decedent Estate Law (Consol. Laws, c. 13) § 14, declaring that wills shall be construed to pass all real estate which testator was entitled to devise at the time of his death, and Real Property Law (Consol. Laws, c. 50) §§ 130, 176, and Personal Property Law (Consol. Laws, c. 41) § 18, declaring that real and personal property embraced in a power to devise passes by will purporting to convey all property of testator, unless the intent that the will is not to operate as an execution of the power appears, a will executed by a donee of a power during the life of testatrix, creating in the donee a life estate, with power of appointment by will is a valid exercise of the power, where the donee survives testatrix.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1655–1661; Dec. Dig. § 693.*]

2. WILLS (§ 693*)—CONSTRUCTION—PROPERTY DEVISED.

Under Decedent Estate Law (Consol. Laws, c. 13) § 14, declaring that wills shall be construed to pass all the real estate which testator was entitled to devise at the time of his death, and Real Property Law (Consol. Laws, c. 50) §§ 130, 176, and Personal Property Law (Consol. Laws, c. 41) § 18, providing that real and personal property embraced in a power to devise passes by a will purporting to convey all the property of testator, unless the intent that the will shall not operate as an execution of the power appears, a will executed by a donee of a power, whereby he devised and bequeathed all his property of which he might be possessed at the time of his death, or to which he might have any interest, passed property in which testator had a life interest under his mother's will, with a power of appointment to the remainder by will, where the donee survived his mother.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1655–1661; Dec. Dig. § 693.*]

3. WILLS (§ 693*)—EXECUTION OF POWER OF APPOINTMENT—EFFECT.

Under Real Property Law (Consol. Laws, c. 50) §§ 130–182, relating to powers, a testamentary gift in trust to pay the income to a beneficiary for life, with power to dispose of the corpus by will, passes to the trustee and from him to the appointee by the life beneficiary, by virtue of the original will, and not by virtue of any interest in the life beneficiary.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1655–1661; Dec. Dig. § 693.*]

4. WILLS (§ 693*)—EXECUTION OF POWER OF APPOINTMENT—EFFECT.

Under Real Property Law (Consol. Laws, c. 50) § 176, and Personal Property Law (Consol. Laws, c. 41) § 18, providing that real and personal property embraced in a power to devise passes by will purporting to convey all the property, unless the intent that the will is not to operate as an execution of the power appears, a direction in a will by a donee of a power to appoint by will for the payment of his debts does not charge the property subject to the power with the donee's debts, though the will disposes of other property.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1655–1661; Dec. Dig. § 693.*]

5. WILLS (§ 707*)—CONSTRUCTION—COSTS—LIABILITY.

Where a suit to construe a will did not affect the share given to a beneficiary, she should not be called on to pay any part of the costs, but the costs should be paid out of the balance of the estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1684–1686; Dec. Dig. § 707.*]

Appeal from Special Term, New York County.

Action by Charles S. Hirsch and another, executors and trustees, etc., of Frederica Bucki, deceased, against Louise S. Bucki, individually and as executrix of Charles Lloyd Bucki, deceased, and others, for the construction of a will. From a judgment construing the will, certain of the defendants appeal. Modified and affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Crawford & Tuska, of New York City (Benjamin Tuska, of New York City, of counsel), for appellant Weisz.

Walter E. Ernst, of New York City, for appellants Hirsch, Eising, and Loewenthal.

Henry H. McCorkle, of New York City (Henry Pegram, of New York City, of counsel), for respondent Bucki.

Sidney Bernheim, of New York City, for plaintiffs.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CLARKE, J. Frederica Bucki, the mother of Charles Lloyd Bucki, executed her last will and testament on October 26, 1910. By the sixth clause thereof she gave all the rest, residue, and remainder of her property, both real and personal, to her executors and trustees in trust for the uses and purposes following:

(a) To invest the same and keep the same invested, etc., and to pay one equal third part of the net income thereof to the use of her niece, Amalie Reif, "during the life of my son, Charles Lloyd Bucki, provided that my said niece shall remain unmarried during that time. * * *

"(b) From and out of the remaining net income, after payment of one equal third part thereof to my said niece, as provided in subdivision (a) hereof, or from and out of the entire net income after the death or marriage of my said niece, to apply such part of the same as in the discretion of my said executors and trustees they shall from time to time deem necessary, proper or expedient for his support and maintenance, which discretion shall not in any manner be interfered with by any court, to the use of my son, Charles Lloyd Bucki, for and during his natural life. * * *

"(f) Upon the death of my said son, Charles Lloyd Bucki, provided my said niece, Amalie Reif, shall have died or married before that time, to pay over and distribute the entire principal of my residuary estate, or so much thereof as shall remain after having deducted therefrom the amount in subdivision (d) or (e) hereof, to such person or persons and in such shares, interests and proportions absolutely or in trust, as my said son, Charles Lloyd Bucki, shall by his last will and testament, duly executed in writing, designate and appoint, and in default of such appointment to pay over the said principal of my residuary estate, or so much thereof as shall remain, as hereinabove provided to my nephews, Charles S. Hirsch, Harry Eising and Walter Loewenthal, or to such of them who may be living at the time of the death of my said son and in equal shares, to have and to hold to their or his own use absolutely and forever.

"(g) If, however, my said son, Charles Lloyd Bucki, shall predecease my said niece, Amalie Reif, and my said niece shall remain unmarried, then and in that event upon the death of my said son, to divide the principal of my residuary estate into three (3) equal third parts and to pay over one equal third part to my niece Amalie Reif, to have and to hold to her own use absolutely and forever, and to pay over and distribute the other two equal third parts to such person or persons and in such shares, interests and proportions as my said son, Charles Lloyd Bucki, shall by his last will and testament, duly executed in writing designate and appoint, and in default of such appointment, to pay over the said two equal third parts to my nephews Charles S. Hirsch, Harry Eising and Walter Loewenthal, or to such of them who may be living at the time of the death of my said son in equal shares, to have and to hold to their or his own use absolutely and forever."

And she appointed her said nephews her executors and trustees.

On the 11th of October, 1912, Charles Lloyd Bucki executed his last will and testament, which provided:

"First: I direct the payment of all my just debts, funeral and testamentary expenses by my executrix hereinafter named as soon after my decease as is possible.

"Second: I give, devise and bequeath unto my beloved wife, Louise S. Bucki, * * * all the rest, residue and remainder of my property, both real and personal of which I may be possessed, at the time of my decease, or to which I may be entitled or in which I may have any interest to have and to hold absolutely and forever."

And he appointed his said wife his executrix.

Mrs. Frederica Bucki died on November 19, 1912, a little over a month after her son Charles executed his will, and Charles died January 25, 1913, about two months after his mother. At the time of the

death of Charles, Amalie Reif was living and unmarried, so that one-third of the residuary estate of Mrs. Bucki vested in her.

This action is brought by the executors and trustees of Mrs. Frederica Bucki to obtain a construction of the will and instructions in the premises. The controversy is presented under three heads:

(1) Hattie E. Weisz, a former divorced wife of Charles Lloyd Bucki, is a creditor in the sum of $54,972.55, consisting of alimony awarded her under a decree entered October 24, 1899, and $23,014.22 thereof, inclusive of interest, was reduced to judgment entered at the foot of the decree. Charles Lloyd Bucki died indebted to various people. The amount of said debts, inclusive of the sum owing to the defendant Hattie E. Weisz, aggregate $75,537.70. He died possessed only of an equity in a piece of real estate, worth not to excceed the sum of $5,000, and personal property worth no more than $100. The claim of Mrs. Weisz is that Charles Lloyd Bucki's will was a valid exercise of the power of appointment, given to him by his mother's will, of two-thirds of her residuary estate; that the direction of the payment of all his just debts as soon after his decease as is possible, made his creditors the appointees under the power; and that the bequest and devise to his wife, Louise, was of the rest and residue after the payment of said just debts.

(2) His widow, Louise, claims that he exercised the power of appointment by his will and that she is the appointee in her own right and interest; that the direction to pay debts was no other than the formal expression of the duty cast upon the executor by law, and did not create Bucki's creditors appointees under the power; that the creditors had no rights or interest in the estate of Bucki's mother; that they could not have derived anything therefrom during the lifetime of Bucki, and so cannot after his death, because it never was his; that all that was given to him was the right to designate to whom it should go after his death, and that the statute carries it to the residuary legatees.

(3) The three nephews of Mrs. Bucki, who are the executors, in their individual capacity, claim that there was no exercise of the power of appointment, because no mention is made in the will of Charles of any power of appointment, or of any property over which he might have power of appointment; that the power of appointment which he had came to him only upon the death of his mother, which occurred after the execution of his will, and that therefore, in the absence of a valid appointment, the said two-thirds of her residuary estate vest in them.

The learned Special Term resolved this tripartite controversy in favor of Mrs. Louise S. Bucki, holding that the two-thirds of the estate in question were effectually appointed to her, free from the claims of creditors of her husband, the donee of the power. From the judgment, appeals are taken by Mrs. Weisz and by the nephews of Mrs. Frederica Bucki.

[1, 2] I think the will of Charles Lloyd Bucki is a valid execution of the power of appointment conferred upon him by the will of Frederica Bucki. Section 14 of the Decedent Estate Law (chapter 13, Cons. Laws; chapter 18, Laws 1909) provides that:

"Every will that shall be made by a testator, in express terms, of all his real estate, or in any other terms denoting his intent to devise all his real property, shall be construed to pass all the real estate, which he was entitled to devise, at the time of his death."

Section 130 of the Real Property Law (chapter 50, Cons. Laws; chapter 52, Laws of 1909) provides that:

"Powers, as they existed by law on the thirty-first day of December, eighteen hundred and twenty-nine, are abolished. Hereafter the creation, construction and execution of powers, affecting real property, shall be subject to the provisions of this article. *   *   *"

Section 176 thereof provides that:

"Real property embraced in a power to devise passes by a will purporting to convey all the real property of the testator, unless the intent that the will is not to operate as an execution of the power, appears, either expressly or by necessary implication."

Section 18 of the Personal Property Law (chapter 41, Cons. Laws; chapter 45, Laws of 1909) provides that:

"Personal property embraced in a power to bequeath, passes by a will or testament purporting to pass all the personal property of the testator, unless the intent, that the will or testament shall not operate as an execution of the power, appears therein either expressly or by necessary implication."

It has always been the rule in this state that a will of personal property relates to the time of the death of the testator. Van Vechten v. Van Veghten, 8 Paige, 104, 116; Lynes v. Townsend, 33 N. Y. 558, 564. In construing section 5, 2 R. S. 57 (which was the source of section 14 of the Decedent Estate Law cited supra), in Youngs v. Youngs, 45 N. Y. 254, the court said:

"This changes the common-law rule, that a will operates only upon real estate owned by the testator at the time of making the same, the title to which he retained to the time of his decease, and substitutes therefor a more reasonable rule, that when it appears from the will that it was the intention of the testator to dispose of all the real estate owned by him at the time of his death, his will should be effectual for that purpose. The residuary clause expressly disposes of all the testator's real estate not before specifically disposed of. This brings the case within the statute rule."

In Byrnes v. Baer, 86 N. Y. 210, Andrews, J., said:

"A testator understands that his will takes effect only upon his death, and where he in terms devises all his real property the natural inference is that he refers to all the real estate he shall then own. Unless specially instructed, he would not understand that a different rule applied to real from that applied to personal property, or that a republication would be necessary to pass after-acquired property of one kind and not of the other. The section referred to has abrogated the rule of the common law, and it enacts a new rule of construction, viz., that words of general devise shall be construed to pass all the real estate which the testator was entitled to devise at his death. *   *   *  Where the will in terms devises all the testator's real estate, without limitation, there is no room for construction. The statute makes the devise to speak as of the time of the testator's death, and all his real estate, which he then owns and could devise, is comprehended in the disposition."

It seems clear, therefore, that although at the time Charles Lloyd Bucki executed his will his mother was still living, and therefore her will had not become effectual, nor had Charles become vested with any

real or personal property thereunder, or entitled to exercise any power of appointment given thereby, nevertheless, as he outlived his mother, whatever he took upon her death by the provisions of her will became vested in him and passed by his own will, although executed prior to her death. This is true of personal and real property. I think it also true as to the exercise of a power of appointment.

In Lockwood v. Mildeberger, 159 N. Y. 181, 53 N. E. 803, one Catherine Lowerre bequeathed one-sixth of her residuary estate to her executors in trust for the use of her granddaughter, Adelaide Lockwood. Her will contained the provision that in case her granddaughter should die without lawful issue surviving she was authorized and empowered to dispose of one equal one-half of the said one-sixth part of her estate devised to or in trust for said granddaughter so dying to the surviving husband, if any there shall be, by a last will and testament, or by any other instrument in writing under her hand and seal, executed in the presence of two or more credible witnesses. Sixteen years after the death of her grandmother, Adelaide L. Lockwood married one Elwood Mildeberger, making her will on the same day. She died in 1895, leaving her husband surviving, but without leaving any issue surviving. Her will contained a direction for the payment of debts, a specific devise, a number of legacies, and then the following clause:

"Fourth: All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath to any child or children that may be born to me. * * * In case, however, I die without issue me surviving, then I give all said rest, residue and remainder of my estate to my husband, Elwood Mildeberger."

Parker, C. J., in delivering the unanimous opinion of the Court of Appeals, said:

· "Both the Special Term and the Appellate Division were of the opinion that by this residuary clause in her will Mrs. Mildeberger did not execute the power of any appointment vested in her by the will of her grandmother; but it seems to us that, in view of the state of the law upon that subject, it must be held that the residuary clause operated as a valid and effective execution of the power. * * * It is the law of this state that by the residuary clause, by which Mrs. Mildeberger gave to her husband all the rest, residue, and remainder of her estate, she executed the power of appointment given to her by her grandmother's will, unless it appears expressly, or by necessary implication from the language of the will, that it was not her intent that the will should operate as an execution of the power. It is not pretended that she expressed an intent that the residuary clause should not operate as an execution of the power, nor do we think that it appears by necessary implication. Such an intent is not to be implied from the fact that no reference was made to her grandmother's will, or to the power of appointment therein conferred upon her, for the disposition of all her own property operated under the will as an exercise of such power of appointment. The omission of all reference to it, therefore, does not imply an intent not to execute the power. * * * The will attempts to dispose of Mrs. Mildeberger's own property, and all of it, and nothing more; but the law steps in and declares that the attempt to dispose of all her own property operated as an execution of the power of appointment. The will purports to convey all the real and personal property of Mrs. Mildeberger, and by force of the statute the power of appointment is presumed to be exercised in the same direction. * * * It is neither reasonable nor necessary to imply from the language used an intention not to execute the power. It was not necessary, as we have seen, that

she should have had an intent to execute it, for the statute steps in and sends the property, subject to the power, in the same direction as that in which the testatrix has sent her own property."

In Mott v. Ackerman, 92 N. Y. 539, Henry Mott gave certain real and personal property to his executors in trust to hold one-third part thereof for the benefit of his daughter Esther, during her life, and if she should be single and unmarried at her death, then upon such trust and for such purposes as she should appoint by her last will and testament.· She died unmarried and without issue and left her residuary estate to her sisters. Finch, J., said:

"It is next objected that the will of the unmarried daughter, Esther, who died before her sisters, was not a valid execution by her of the power of appointment as to one-third of the estate. But the statute provides that lands embraced in a power to devise pass by a will which purports to convey the whole real property of the testator, unless a contrary intention is manifested. Esther's will directs the payment of debts and funeral expenses, and then gives to her sisters all the rest, residue, and remainder of her estate, both real and personal, of every nature whatsoever and wheresoever. 1 R. S. p. 737, § 126. The language is broad and brings the case clearly within the rule prescribed by the statute."

In New York Life Insurance & Trust Co. v. Livingston, 133 N. Y. 126, 30 N. E. 724, one De Peyster executed a deed of trust to plaintiff, whereby he transferred to it certain real and personal property, to receive the rents and income during his life, and after his death to convey and assign it "to such person or persons and in such shares as shall be designated and appointed by" him "by his last will and testament." Mr. De Peyster died leaving a will, which after a legacy provided:

"I give and bequeath to my uncle, John Henry Livingston, all the rest, residue and remainder of my estate, both real and personal property, of what nature and kind soever and wherever situate, which I may own or be in any manner entitled to at the time of my death."

Andrews, J., said:

"This was a good execution of the power of appointment contained in the prior trust deed. * * * By section 126 of the statute of powers it is enacted that 'the lands embraced in a power to devise shall pass by a will purporting to convey all the real property of the testator, unless the intent that the will shall not operate as an execution of the power shall appear expressly or by necessary implication.' By analogy the same rule of construction applies to wills of personal property. Cutting v. Cutting, 86 N. Y. 522; Hutton v. Benkard, 92 N. Y. 295."

The cases collected upon the brief of the individual defendants appellant, who claim that there was no exercise of the power of appointment by the will of Charles Lloyd Bucki, have been carefully examined, but they do not shake the conclusion that I have reached that 'there was a valid appointment. They arose under the rule of the common law, which, as we have seen supra, has been abrogated by statute in this state, or in other states where our statutory provisions do not obtain. It would be useless, therefore, to consider them seriatim.

[3] The next question that arises is the contention of the appellant Weisz. While she concedes that the power of appointment was exer-

cised by the will, for she would have no standing here otherwise, she claims that the direction to the executrix to pay all the just debts of the decedent either constituted his creditors the appointees under the power, or thereby the property appointed was blended with his own and became subject to the claims of creditors in preference to those of legatees or gratuitous appointees.

It may be well to consider first whether creditors of the donee of the power have any rights in an estate appointed by will. In Cutting v. Cutting, 86 N. Y. 522, Folger, C. J., stated the case thus:

The suit was "in equity, seeking to charge a debt owned by the plaintiff against the estate of Fulton Cutting, deceased, upon certain estate, made up of real and personal property. The estate sought to be charged was owned, in her lifetime, by Mrs. Gertrude Cutting, the mother of Fulton Cutting. She made a will, and died, by which will she gave that estate to executors, in trust, to take the rents and profits during his life, and apply them to his use, and upon his decease to make over the body of the estate to whomsoever he should by his will appoint to receive it. He made a will, and a codicil to it, and died, having appointed by that will that that estate should be made over to Walter L. Cutting, in trust for two sons of him, the testator, and by that codicil having given to his sister all the interest which he had or might have in the estate of his mother. Neither Walter L. Cutting, nor the two sons, nor the sister, appear from the case to have been creditors of the testator, but volunteers. The plaintiff is a creditor of the testator, by judgment got against him in his lifetime. It is that judgment debt that it is sought to have charged. The plaintiff relies therefor upon a rule of equity, which he claims to be that where a person has a general power of appointment by will over property, and has exercised the power, the property thus appointed forms a part of his assets, and is subject to the claims of creditors, and that, too, in preference to those of a legatee or of the gratuitous appointee. The text-books state the rule to be as it is claimed by the plaintiff, * * * and the decisions cited in them amply uphold the statement they make. * * * We have come to a conclusion, based upon the Revised Statutes, that the English rule has been abrogated by our Legislature, and that the plaintiff cannot maintain his position."

Upon an exhaustive review of the cases and the statutes the court reached these results:

That the "will of Mrs. Cutting created in Fulton Cutting an authority of appointment that was a lawful, general, and beneficial power, within the provisions of the Revised Statutes"; that by sections 81, 82, 83, 84, 85, and 86, of the article "Of Powers," an "absolute power of disposition, unaccompanied by a trust, given to the owner of a particular estate for life or for years, or to one to whom no particular estate is limited, or where no remainder is limited on the estate of the grantee of the power, or where there is a general and beneficial power to a tenant for life or for years, to devise the inheritance, by which the grantee is enabled in his lifetime to dispose of the entire fee for his own benefit, is construed to change that power into a fee, absolute in respect to the rights of creditors and purchasers, with reservatory provisions as to future estates limited thereon."

And again:

"The terms used by the revisers do not include a power to appoint by will, they speak of a power to a man 'to sell when he chooses,' and to dispose of the proceeds at his pleasure.' And so, when they came to draft the law to carry out their purpose, they use the phrase 'absolute power of disposition,' but confine it to a power by which the grantee is enabled in his lifetime to dispose of the entire fee for his own benefit. Section 85. * * * The revisers sought to protect creditors by declaring that an absolute power of disposition should be deemed equivalent to actual ownership (5 Edm. Stat. at

Large, 328); and by an absolute power of disposition they meant a power of disposition in the lifetime of the donee, or, in their own words, a power by which he 'may sell when he chooses, and dispose of the proceeds at his pleasure.' * * * A person indebted may, by the statutes, be the grantee of a power from another to alien lands, so that his own creditors might not reach them or the proceeds of them. Inasmuch as the lands were not his, and so not liable to his creditors before the creation of the power, it is difficult to see what natural or abstract right creditors have in them, whereby they may justly complain for that he can exercise the power otherwise than for their good. * * * It was not the purpose to give to creditors new rights and to subject to these claims property in which they never had an interest, because the lawful owner of it saw fit to leave the future disposition of it to a power of appointment by will."

It was held that a bequest of personal property with a power of disposition should be measured by the same rule as a devise of real estate with the same power, and—

"the judgment of this court is that the personal estate bequeathed by Mrs. Cutting as above stated is, alike with the real estate devised by her, out of the reach of the plaintiff, as a judgment creditor of Fulton Cutting."

The appellant suggests in her brief that, if the facts of Cutting v. Cutting were now to come before the Court of Appeals, that tribunal would take a different position, citing Farmers' Loan & Trust Co. v. Kip, 192 N. Y. 266, 85 N. E. 59. But Judge Werner in that case quoted Judge Finch in Crooke v. County of Kings, 97 N. Y. 421, who said:

"In Cutting v. Cutting, 86 N. Y. 522, the meaning and construction of the absolute power of disposition specified in sections 81 and 85, inclusive, of the statute relating to powers, was settled with a care and precision which leaves us at liberty to take and depend upon the result without repetition of the analysis which led to it."

There is no substantial difference in the statute "of powers" as considered in the Cutting Case and as now found in article 5 of the Real Property Law (chapter 50, Cons. Laws; chapter 52, Laws 1909). Therefore that case is a complete authority for the proposition that by Mrs. Bucki's will no estate, right, or interest in her property was transferred to or became vested in Charles Lloyd Bucki which his creditors could reach. He had a general beneficial power of appointment, which merely gave him the right to name by his will the person entitled to take upon the termination of the trust estate upon his death. He was not given a power of disposition, by which he was enabled in his lifetime to dispose of the entire fee for his own benefit. The title passed from his mother to her trustees, and from them to his appointee, by virtue of her will. The title never vested in him or passed through him.

[4] I do not think that the direction to pay debts in the will of Charles Bucki charged, or indicates an intention on his part to charge, the property over which he had power of appointment with the payment of his debts. Upon a similar point, namely, whether a direction to pay debts in a will denotes an intent to charge the payment thereof upon property not already so charged by law, the courts of this state have repeatedly said that a direction to pay debts is a superfluous provision, a simple statement of what the law compels, a mere convention-

al formula, which adds nothing to the meaning of the will. In Matter of City of Rochester, 110 N. Y. 159, 17 N. E. 740, Gray, J., said:

"Courts should be slow to construe an intention to charge the payment of debts upon a devise of real estate, from the use in a will of formal words, or the presence of commonly employed phrases. Of such a case this seems a fair illustration. For, beyond the opening words of the will, 'After all my lawful and just debts are paid, I give,' etc., 'to my wife,' etc., the instrument concededly is devoid of any expression or declaration by the testator of intention as to the mode of payment of his debts. These words have become a usual formula in wills. * * * If we except the formal words with which this will opens, the testator's language furnishes no inference or clue of intention."

To the same effect, Brill v. Wright, 112 N. Y. 129, 19 N. E. 628, 8 Am. St. Rep. 717; Clift v. Moses, 116 N. Y. 144, 22 N. E. 393; Matter of Powers, 124 N. Y. 361, 26 N. E. 940; Matter of Bingham, 127 N. Y. 296, 27 N. E. 1055; Cunningham v. Parker, 146 N. Y. 29, 40 N. E. 635, 48 Am. St. Rep. 765.

Balls v. Dampmann, 69 Md. 390, 16 Atl. 16, 1 L. R. A. 545, is in point. In that case a parcel of land had been devised by the will of John Balls to Elizabeth A. Balls for life, with a power in her "to will and dispose of the same in such manner as she may see fit by any instrument in the nature of a last will and testament she may see proper to make." Elizabeth died leaving a will which provided:

"First. I order and direct all my just debts and funeral expenses to be paid. Item—I hereby devise and bequeath to my two youngest daughters, namely, Elizabeth Balls and Sallie Balls, all my property real and personal and mixed, and all my estate of every kind whatsoever and wheresoever situate."

A bill was filed in equity praying for the sale of the land to pay a promissory note held against Elizabeth A. Balls. The Maryland Court of Appeals, after holding that the power of appointment had been exercised by the will, said:

"The result is that the two youngest daughters take the property as appointees, unless the contention of the appellant is correct that the first clause of the will of Mrs. Balls, directing all her just debts to be paid, is an execution of the power and an appropriation of the property to the payment of her debts. This proposition is wholly untenable. No such effect can possibly be given to these general words. * * * If these words had not been written in the will of Mrs. Balls, it is not pretended, on the part of the appellant, that he could reach this property for the payment of the note in question. The fact that they are in the will adds, as we have just seen, nothing to it, and gives it no more or greater efficacy than if they had been wholly omitted. These words cannot, therefore, be regarded as applying this property to the payment of her debts, even if her own estate be insufficient for that purpose."

Section 176 of the Real Property Law provides that real property embraced in a power to devise passes by a will purporting to convey the real property of the testator; and section 18 of the Personal Property Law is to the same effect as to personal property. Charles Bucki's will did not purport to convey his property to his executrix. It directed his executrix to pay his just debts. He left certain property which belonged to him in his lifetime. His debts were chargeable against this property. But he gave, devised, and bequeathed all the rest, residue, and remainder of his property, both real and personal, to

his wife, naming her. By virtue of the statute the property embraced within the power passed by the will to her. This property never belonged to him. His executrix took no title to it as belonging to him. It passed by direct appointment to Louise Bucki, free from any liability to pay his debts after his death, as it had been free from such liability before his death.

[5] In providing for costs, the judgment made them payable out of the entire residuary estate of Frederica Bucki. The effect is that one-third thereof has to be paid out of the share left to Amalie Reif, in regard to which there has never been a question. She should not be called upon to pay for litigation in which she has been in no way interested. The judgment should be modified by requiring the costs to be paid out of the two-thirds in controversy. The twenty-sixth finding of fact should be reversed. There is no evidence to support it.

As modified, the judgment appealed from should be affirmed, with costs to respondent Louise S. Bucki and to the executors plaintiffs, to be paid out of the fund in controversy. All concur.