JAMES C. H. McLEAN, as Sole Surviving Trustee under Two
Written Agreements or Trust Indentures, Both Dated the
12th Day of November, 1909, the Former Made by GEORGE
H. McLEAN and EDWARD A. WALTON, Individually and as
Executors, etc., of JAMES M. McLEAN, Deceased and LESLIE
A. McLEAN, Deceased, and the Latter by GEORGE H. McLEAN
and EDWARD A. WALTON, as Executors and Trustees under
the Will of JAMES M. McLEAN, Deceased, and JAMES C. H.
McLEAN and LESLIE A. McLEAN, Respondent, *v.* JAMES C.
H. McLEAN, Individually and as Administrator with the
Will Annexed of JAMES M. McLEAN, Deceased, and Others,
Appellants, Impleaded with LAURA M. SCHOFIELD, Indi-
vidually and as Executrix, etc., of LESLIE A. McLEAN,
Deceased, and Others, Respondents.

(*Supreme Court, Appellate Division, Second Department; Oct. 6, 1916.*)

WILL—POWER OF APPOINTMENT CONSTRUED—EFFECT OF GIFT OF RESIDUARY
ESTATE UPON POWER OF APPOINTMENT—FAILURE OF DONEE OF POWER TO
EXERCISE SAME TO FULL EXTENT—APPOINTMENT AS TO PERSONAL ESTATE.

A will placing property in trust, income to two sons of the testator
for life, provided that on the death of either son half of the residuary
estate was to be paid to his lawful issue, and each son was given a
power of testamentary appointment to dispose of one-third of the share
of which he had a life use among the testator's then living lineal
descendants and the son's surviving wife "in such manner and propor-
tions as to him shall seem proper." In case a son should die without
surviving issue his share, or so much thereof as was not disposed of by
testamentary appointment, was to be paid to the other son absolutely,
or to his issue *per stirpes.*

One of the sons died leaving a widow, but no issue, and by his will
gave to his widow a life use of all the property over which he had a
power of appointment under his father's will, with a further power to
appoint by her own will the principal of said fund, one-half thereof to a
specified hospital and the other half to a specified club, but following this
clause the will devised and bequeathed the residue of the estate to the
widow, who was also named executrix.

The widow of the son subsequently died, leaving a will in which she
gave small bequests to the institutions named by the husband in his
will, but gave to her sister the residue of all the property to which she

was entitled under the wills of the original testator and of her husband.

Wills construed, and *held,* that although the widow of the son did not fully carry out the appointment to the institutions indicated in her husband's will, which appointment he could not authorize as the estate was limited to the lineal descendants of the original testator, the residuary clause in the son's will was effective to enable her to appoint the capital of the trust fund to her sister.

An appointment under a testamentary power will not fail merely because it does not go to the full extent of the power conferred; thus the donee of the power may give a life estate rather than the whole fee.

An instrument executing a testamentary power need not, under the laws of this State, refer to the source from which the power is derived, and said rule applies as well to wills of personalty as to wills of real estate.

APPEAL by the defendants, James C. H. McLean, individually and as administrator, and others, from parts of a judgment of the Supreme Court in favor of the plaintiff and certain of the defendants, entered in the office of the clerk of the county of Westchester on the 11th day of May, 1916, upon the decision of the court after a trial at the Westchester Special Term, in a suit for the judicial settlement of the accounts of the surviving trustee under the will of James M. McLean.

This testator died May 13, 1890, leaving two sons, George H. and Cornelius, who both married. This will gave the trust property to be held by trustees, who were to apply the net income of half of the residuary estate to the use of each son (George H. and Cornelius) during his natural life. On the death of either son half of his residuary estate was to be paid over to his living lawful issue. But each son had a power of testamentary appointment to dispose of one-third of his share, of which he had enjoyed the life use, " among my then living lineal descendants and his wife him surviving or any or either of them, and in such manner and proportions as to him shall seem proper." If, however, either son should have no surviving issue, then the share, or so much thereof as shall not be disposed of by his testamentary appointment, should be paid over to the other son, absolutely or to his issue taking *per stripes.*

George H. had two sons, James C. H. McLean, plaintiff, and Alan D. McLean, one of the defendants. Cornelius died leaving a widow, Leslie (but no issue), on February 18, 1908. About two years before his death he executed a will, in which he gave the use of all the property over which he had the power of appointment to his wife, Leslie, during life or widowhood, with a power to appoint in her will the *principal*, one-half thereof to the Mount Vernon Hospital (or so much as would be needed for a wing or ward), and the remaining half to the Westchester Women's Club of Mount Vernon. His wife was also named as residuary legatee. The precise wording of this provision appears in the subsequent opinion.

On Cornelius' death a question arose as to the widow's right to the capital of one-third of Cornelius' interest in this trust fund (one-third being the extent of this power under the will of James M. McLean), which amounted to $93,305.81. All then agreed that these securities should be set aside, and that she should enjoy the income, and that, on her remarriage or death, there should be a judicial determination of the title to the capital of this fund. On March 9, 1909, Mrs. Leslie A. McLean executed a will, followed by a codicil on March 18, 1912, by which she provided that, if her estate should exceed $75,000, certain small legacies should be paid to relatives—and one of $2,000 to the Mt. Vernon Hospital, and $1,000 to the Westchester Women's Club, also another of $2,000 to the Martha Wilson Home. All the rest, including any property to which she was entitled then or thereafter under the wills of James M. McLean and Cornelius McLean, except as in said last will and testament provided, the testatrix bequeated to her sister, Laura M. Schofield.

On February 18, 1913, George H. McLean died. His will gave all his property to his wife and two sons. Mrs. Leslie A. McLean died on March 19, 1915, leaving in force the dispositions by her will as above.

The chief question is the construction and effect of the will of Cornelius McLean.

Plaintiff and the representatives of George H. McLean contended that, beyond the life estate to his widow Leslie, Cornelius had not validly exercised his power of appointment. Defendant Schofield claimed that an execution of the power had been exercised so as to vest same in the widow, which by her testamentary appointment then passed to her sister and other legatees. This is also claimed on behalf of the hospital and the Wilson Home.

The learned justice at Special Term held that under the limits of the original power of appointment, Cornelius could not name the hospital and woman's club, as he was confined to the donor's " lineal descendants " and the son's surviving wife. He sustained the appointment to the wife, Leslie, for life, or during widowhood, of the property " over which he had the power of appointment." The residuary clause was held effectually to pass and exercise in the wife's favor the power to appoint the capital of the trust fund.

The appeals here are by James C. H. McLean as an individual, and in his representative capacities. Mrs. Harriet A. McLean also appeals as executrix, trustee and individually, and Alan D. McLean, individually, also is an appellant.

Albert B. Boardman (Philip W. Boardman, Henry F. Herbermann, and George E. Cogswell, with him on the brief), for the defendants McLean.

Arthur I. Strang, for the respondent Laura M. Schofield, as executrix, etc.

Frederick W. Clark, for the respondent Mount Vernon Hospital.

Arthur M. Johnson, for the respondent The Martha Wilson Home.

PUTNAM, J.—The completed exercise of the testamentary power of appointment, through the effect given to the residuary clause in the will of Cornelius McLean, works out a result which Cornelius McLean may not have foreseen. Apparently it reverses the testator's intention as first expressed, which, though perhaps but a partial plan, was to give his wife an interest during her life, or widowhood. Although he gave a conditional right to income, that did not exhaust his acts in execution of the power. Neither did the execution of the power stop in his abortive attempt to make an appointment to the two institutions which were not the legitimate "objects" of the power.

This result, that the wife could dispose of the *corpus* of the fund, comes from a presumption of law introduced by our Revised Statutes. The revisers' notes point out the unsatisfactory and confusing state to which the law of powers had come in England, especially the over-technicalities surrounding execution of powers which led to marked divergences between the law courts and those of chancery. (3 R. S. [2d ed.], Appendix, 591, 592.) Our revisers vigorously cut the knot, in a way that was afterwards followed in the English Wills Act (1 Vict. chap. 26, § 27), in 1837, and in many of our States. (See 22 Am. & Eng. Ency. of Law [2d ed.], 1119.) The instrument executing the power need not now refer to the source from which the power is derived. As to wills, there was a still broader rule. "Lands embraced in a power to devise, shall pass by a will purporting to convey all the real property of the testator, unless the intent that the will shall not operate as an execution of the power, shall appear, expressly or by *necessary implication*." (1 R. S. 737, § 126; Real Prop. Law [Gen. Laws, chap. 46; Laws of 1896, chap. 547], § 156; Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap. 52], § 176; 4 Kent Com. 333.) This statute "steps in and sends the property, subject to the power, in the same direction as that in which the testatrix has sent her own property." (Lockwood v. Mildeberger, 159 N. Y. 181, 188. See, also,

New York Life Ins. & T. Co. v. Livingston, 133 N. Y. 125; Hogle v. Hogle, 49 Hun, 313.)    Section 18 of the Personal Property Law (Consol. Laws, chap. 41; Laws of 1909, chap. 45) assimilates personalty to real property by adopting the same words as to powers over personalty; so that this rule as to powers is, in the same manner, to be applied to wills of personalty.    (Hutton v. Benkard, 92 N. Y. 295; Pers. Prop. Law [Gen. Laws, chap. 47; Laws of 1897, chap. 417], § 6.)

Such a residuary clause ordinarily purports to convey *all* the testator's property.    Thus under the canon of construction to avoid intestacy, even in the absence of the New York statute as a guide, Justice Story deduced from a residuary bequest a full execution of such a power.    (Blagge v. Miles, 1 Story, 426.)

The bequest by Cornelius McLean's will was:

" I give and bequeath the use of all the property and estate over which I have the power of appointment under the last Will and Testament of my beloved father, James M. McLean, deceased, to my wife, Leslie A. McLean, as long as she shall remain my widow, with full power to appoint and direct by last will and testament the payment, transfer and conveyance of the principal of which she shall have enjoyed the use during her life or widowhood, one-half thereof to the Mount Vernon Hospital to be used so much thereof as shall be necessary in building a wing or ward to said hospital, to be known as the Leslie A. McLean Memorial Ward, and any surplus to be invested by the trustees thereof, and the income derived there-from to be applied towards the proper furnishing and maintaining of the same; the remaining half to the Westchester Women's Club of Mount Vernon.

" All the rest, residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath to my beloved wife, Leslie A. McLean, whom I hereby name to be executrix of this my Last Will and Testament."

Although counsel questions the right to create by appoint-

ment merely a life estate, when the testator's power extended to appointing the fee, we think there is no ground for such objection. The present Real Property Law, section 177, expressly declares that a disposition is not void on the ground that it is more extensive than was authorized by the power, but an estate or interest so created so far as embraced by the terms of the power is valid. (See, also, Real Prop. Law [Gen. Laws, chap. 46; Laws of 1896, chap. 547], § 157; 1 R. S. 737, § 123.) If we may eliminate the excess as harmless, then the omission to go to the full extent of the power could not be a grievance, even if the execution stop at an estate for life or for years, as the donee of the power is not bound to dispose of the whole fee. (Root v. Stuyvesant, 18 Wend. 257, 273.)

The appointments expressly declared for the hospital and women's club are not to be got rid of by treating them as merely precatory words, and not imperative. (Smith v. Floyd, 140 N. Y. 337.)

The real question is whether this gift of an estate in income, for life or widowhood, followed by the non-execution of the attempted dispositions for the two institutions, excludes our statutory presumption that these failing and defective gifts may be supplemented, and the power fully exercised, through the force of an unqualified residuary clause.

A residuary clause is held to include property described by appointments failing, or becoming invalid. (Matter of Hunt's Trusts, L. R. 31 Ch. Div. 308. See 31 Cyc. 1142.) Still, in the other parts of a will there may be inconsistencies by partial gifts, which may operate to exclude, or at least to circumscribe, the terms of a general residuary clause. Are there, then, in this will, such inconsistencies as would " expressly or by necessary implication " (for that is the revisers' term restricting our right of construction) exclude the inference by statute, that through this residuary clause the power was exercised? (See New York Life Ins. & T. Co. v. Livingston, supra; Hirsch v. Bucki, 162 App. Div. 659.)

As Mr. Justice Young said in his opinion in this case: " It must also be observed that, under the statutes above quoted, the court is not called upon to find or determine a direct intention on the part of the testator, as gathered from the will, to execute the power. That intent is presumed; the contrary intent must appear. The duty of the court in this respect is to consider the provisions of the will and determine whether or not there is disclosed by the will expressly or by necessary implication an intention on the part of Cornelius not to execute this power of appointment."

On this subject, testamentary intent really means a purpose to make a will according to its statutory effect. (Crooke v. County of Kings, 97 N. Y. 421; Farmers' Loan & Trust Co. v. Kip, 192 id. 266, 279.)

In Scriven v. Sandom (2 J. & H. 743) a testator, under a marriage settlement covenant, was to pay to the settlement trustees £2,000 in trust for his wife for life, with remainder to his general appointees by deed or will. By his will he directed his executors to pay £2,000 to the trustees on which the income was to be paid to his wife for life. He then bequeathed her his residuary estate, subject to certain legacies. Wood, V. C., held that his life estate was not inconsistent with the widow's receiving the capital of the fund, as the facts did not bring the case within the principle that a partial gift of a fund may be read as excluding the intention to appoint the whole by a residuary bequest.

The decisions in New York Life Ins. & T. Co. v. Livingston (supra) and Lockwood v. Mildeberger (supra) go even more emphatically to execute a power through a residuary bequest.

This result seems to be sufficiently supported without adverting to the additional fact that the testator had no other property, as appears by the transfer tax affidavit, as well as by accounts of his estate as filed, in which situation courts sometimes have inferred from the absence of property that such a

power was necessarily the one and only object on which the residuary bequest could operate.

This, then, is an instance where it is safer to adhere to our statutory presumption adopted before powers had come into use in New York, and now accepted as a practical guide in the construction of wills, having become a long-settled rule of property, rather than to attempt to disturb it by drawing distinctions based on the testator's supposed expectations.

To weaken this rule by reading into the bestowal of a life interest upon the wife an intention to impair the force of the residuary clause would be a violence to the testator's legal intention as well as a dangerous interference with a statutory rule of property both in land and in personalty.

So I advise to affirm, with costs to respondents payable out of the estate.

CARR, STAPLETON and RICH, JJ., concurred.

Judgment affirmed, with costs to the respondents payable out of the estate.