In the Matter of the Estate of ALICE TERWILLIGAR, Deceased.

Surrogate's Court, Kings County, December 21, 1931.

*Kiddle, Margeson & Hornidge,* for the executors.

*Arleigh Pelham,* special guardian of infant Alice Rutter Margeson.

*John P. Carroll,* for Gertrude Alice Leckie.

WINGATE, S.   The single question presently in controversy whereas not expressly adjudicated in the former decision in this case, is capable of ready determination on certain of the principles therein discussed (*Matter of Terwilligar,* 135 Misc. 170; unanimously affd. on the opinion of this court, 230 App. Div. 763; leave to appeal to the Court of Appeals denied by Appellate Division, 230 App. Div. 846, and by the Court of Appeals, N. Y. L. J. Nov. 26, 1930, p. 1050).

Briefly stated, the pertinent facts are that the will of B. F.

Terwilligar erected a trust for the life of his wife, Alice, with remainder as she might by will appoint, and in default of such appointment, to specified individuals. Alice, the donee of the power, left a will, which, after directing payment of debts, etc., and making specific gifts of her personal belongings, gave her entire estate and the property over which she had a power of appointment under her husband's will, to her executors in trust to pay three general legacies of $10,000 each and to erect the balance into several trusts for specified individuals. As determined in the former decision, if the principal funds of certain of these trusts were constituted from the remainder of B. F. Terwilligar's trust pursuant to the power of appointment to Alice, the composite directions restrained the power of alienation for exceeding two lives in being and were, therefore, in part at least, void. (Real Prop. Law, § 42, as amd. by Laws of 1929, chap. 229; Pers. Prop. Law, § 11, as amd. by Laws of 1929, chap. 229.) All directions of Alice's will were, however, valid if they could be executed from her own estate and some were valid even when erected from the remainder of her husband's trust. In an effort to preserve the validity of the composite disposition so far as might be possible, the court directed a marshaling of the assets of both estates to the end that so many as possible of the direct benefits given by Alice's will should be paid from the estate of her husband, pursuant to her power of appointment, leaving her own property available for the trusts which would have been partially invalid if their corpus were derived from the husband's estate.

Alice's executors have apparently become confused by this marshalling process and here seek commissions in an executorial capacity on the entire corpus of the trust erected by B. F. Terwilligar's will, in spite of the basic fact that their decedent never possessed a single dollar's worth of that property and had merely a power of appointment over it.

At the risk of appearing tautological, the court feels compelled again to draw attention to the fundamental conceptions respecting powers of appointment to which it briefly adverted at page 176 of its former opinion.

A power of appointment given under a will is included in the general regulation of powers in article 5 of the Real Property Law. (*Cutting* v. *Cutting*, 86 N. Y. 522.) In section 131 of this law a power is defined as: " An authority to do an act in relation to real property, or to the creation or revocation of an estate therein, or a charge thereon, which the owner, granting or reserving the power, might himself lawfully perform."

As is the case with many other provisions of this law, it is

applicable equally to personalty and to realty. (*Matter of Cooksey*, 182 N. Y. 92, 97.)

Since such a power is merely an authority, the extent and manner of execution of which is determinable solely on the principles of agency (*Hillen* v. *Iselin*, 144 N. Y. 365, 373; *Matter of Terwilligar*, 135 Misc. 170, 176), it follows in the ordinary case that the donee of a power, like an agent, possesses no right to or interest in the property to which his agency applies. (*Farmers' Loan & Trust Co.* v. *Mortimer*, 219 N. Y. 290, 295; *Matter of N. Y. Life Ins. & Trust Co.*, 139 N. Y. Supp. 695, 704, not officially reported; affd., 157 App. Div. 916; affd., 209 N. Y. 585; *Hirsch* v. *Bucki*, 162 App. Div. 659, 671.) He has merely a mandate (BRETT, J., in *Andrews* v. *Andrews*, 15 C. D. 243; cited and applied in *Matter of N. Y. Life Ins. & Trust Co.*, *supra*), title at all times remaining in the primary estate until the power is exercised according to its terms, when it passes directly from the underlying estate to the appointee. (*Farmers Loan & Trust Co.* v. *Mortimer*, *supra*.)

As is said by Chancellor KENT (4 Kent Com. 338; cited and followed in *Matter of Stewart*, 131 N. Y. 274, 281, and in *Matter of Harbeck*, 161 id. 211, 218): " An estate created by the execution of a power takes effect in the same manner as if it had been created by the deed which raised the power. The party who takes under the execution of a power takes under the authority and under the grantor of the power, whether it applies to real or personal property, in like manner as if the power and the instrument creating the power had been incorporated in one instrument."

To this quotation, the Court of Appeals, in *Matter of Stewart* (*supra*), appends the statement: " Where the donee of the power has the right of selection, the interest appointed vests in the appointee at the time of the appointment, but his title relates to and is acquired under the instrument creating the power."

This is stated in another way in *Sewall* v. *Wilmer* (132 Mass. 131; cited and followed in *Matter of N. Y. Life Ins. & Trust Co.*, *supra*, at p. 705 of the surrogate's opinion and expressly adopted at p. 586 of the opinion of the Court of Appeals in the same case): " The property of which Mrs. Wilmer has the power of appointment is not her property, but the property of her father; and the instrument executed by her takes effect not as a distribution of her own property, but as an appointment of property of her father under the power conferred upon her by his will."

The entire relationship is closely analogous to that which would exist if an owner of real property executed a deed thereof, complete in all particulars except that the name of the grantee was left blank, and authorized his attorney to fill in the blank.

It is unquestionably this thought which impelled the Court of Appeals to write (*Matter of Harbeck*, 161 N. Y. 211, 218): "The source of their title to the fund was the original will of John H. Harbeck, which went into effect in 1877, and into that instrument must be read the names of the appointees, although designated by a later instrument. For those who take under a power of appointment, take as if their names were in the grant of the power."

Applying these principles to the facts of the case at bar, the legal conception of the matter is precisely the same as if B. F. Terwilligar had directed that the trust erected by the fourth item of his will should be held by Henry T. Horindge and Title Guarantee and Trust Company on the following trusts:

1. To pay the income to his wife, Alice, for life, and on her death,

2. To pay to A and B the sum of $30,000 in trust, to pay $10,000 thereof to Henry T. Hornidge, $10,000 thereof to William T. Hornidge and $10,000 thereof to Wylie C. Margeson, and any still remaining sum,

3. To pay to A and B in trust to hold in specified parts for Georgiana Lediard, Florence E. Rutter, Elsie R. Margeson and Elsie McCleahan.

As thus analyzed, it is obvious that so far as concerns the direction designated " 2," no valid secondary trust is erected. Whereas A and B are denominated " trustees," the direction falls squarely within the provisions of section 93 of the Real Property Law, " no estate or interest, legal or equitable, vests in " A and B, who are mere conduits through which the title passes to the named beneficiaries (*Gueutal* v. *Gueutal*, 113 App. Div. 310, 314), who, in " 2," *supra*, are the named legatees of the three $10,000 legacies. (*Jacoby* v. *Jacoby*, 188 N. Y. 124, 129; *Denison* v. *Denison*, 185 id. 438, 443.) Since no title passes to A and B in this connection, they are obviously entitled to no commissions on the property involved, either as executors or trustees, since section 285 of the Surrogate's Court Act, which regulates commissions, bases the same on money or property received and paid out and neither act is performed by A and B.

Turning now to that portion of B. F. Terwilligar's trust property passing under designation " 3," *supra*, a true trust is found within the enumeration of section 96 of the Real Property Law, under which alone valid express trusts can be created. (*Murray* v. *Miller*, 178 N. Y. 316, 322.) Unquestionably the property here embraced passes to A and B as trustees of an express trust, and they will, *prima facie*, be entitled to commissions for administering it in that capacity. This, however, differs widely from their present con-

tention that they are now entitled to commissions thereon as *executors*. The language of Alice's will made a gift of this portion of the property " to my executors hereinafter named, in trust nevertheless * * * for the " beneficiaries named. To sustain their present contention that they are entitled to executorial commissions on this fund at this time with the consequence that at some later date they should also receive commissions on the same fund as trustees, requires a torturing of this language into something like the following: " I give " the applicable property " to A and B as executors in trust to pay it unto themselves as trustees, in trust for " the beneficiaries named. Even if this were done, it would be obvious that A and B as executors would again be merely the conduit of a dry or passive trust to deliver the trust *res* to A and B as trustees, and by a parity of reasoning with that applying to direction " 2," this would entitle them to no commissions for the passive portion of the operation.

Some stress is laid by the executors on the language of the former decree herein, " that the executors and trustees under the last will and testament of Alice Terwilligar, deceased, shall pay out of the funds coming from the estate of Benjamin Franklin Terwilligar, deceased, the three legacies of $10,000 each bequeathed by the will of Alice Terwilligar, deceased." In view of the law that these funds could never actually come into the hands of Alice's executors, in their executorial capacity (*Hirsch* v. *Bucki*, 162 App. Div. 659, 671; *Matter of Lathers*, 137 Misc. 222, 223), it is obvious that all that was meant by this direction was that the admonition of the opinion respecting marshalling should be observed, and that the fiduciaries of the two estates, who were the same, should apply them in the manner productive of the greatest possible validity of the composite testamentary directions.

One further consideration, leading to the same result of denial of executorial commissions to the executors of Alice Terwilligar's will upon the property of B. F. Terwilligar's trust, is worthy of passing note. A gift of any portion of the remainder of the trust erected by B. F. Terwilligar's will is a specific legacy, since it is a gift of a part of a special and distinct fund or *res* (*Matter of Freeman*, 139 Misc. 301). There is no need for present exhaustive comment on this phase of the subject as it was fully discussed by this court in its opinion in *Matter of Smallman* (138 Misc. 889; see pp. 898–904 and 913–916). It is a gift of a specified or determinable portion of an existing or distinct thing, distinguished from all other property of which disposition is made. This, under the authorities, substantially all of which are collected in the *Smallman* opinion, constitutes it a specific gift and it is primary that an executor

is not entitled to commissions on a specific gift, whether a legacy or devise. (*Matter of Anable*, 139 Misc. 914, and cases cited.)

No executorial commissions will, therefore, be allowed to the executors of Alice Terwilligar on any portion of the funds constituting the trust erected by the will of B. F. Terwilligar.

Proceed accordingly.