In the Matter of the Estate of CLARA ELIZABETH VON HATZFELDT WILDENBURG, Deceased.

Surrogate's Court, New York County, June 26, 1940.

*Max D. Steuer* [*Max D. Steuer* and *Sidney O. Friedman* of counsel], for Central Hanover Bank and Trust Company, as trustee, petitioner.

*Cadwalader, Wickersham & Taft* [*G. Forrest Butterworth, Jr.,* and *William D. McCain* of counsel], for the Security-First National Bank of Los Angeles, as trustee, etc., of Henry Edwards Huntington, deceased, and Archer M. Huntington, as ancillary executor, etc., and residuary legatee, etc., of Arabella D. Huntington, deceased, respondents.

*McLaughlin, Russell & Bullock,* for the executors, etc., and the residuary legatees, etc., of Philip Champion de Crespigny, deceased.

FOLEY, S. In this accounting proceeding the questions presented for determination are:

(1) Whether the testatrix validly exercised a power of appointment conferred upon her under the will of her father?

(2) If validly exercised, the ascertainment of the persons to whom the fund is to be paid?

(3) Whether the exercise of the power failed and payment should be directed to be made to the legal representative of the estate of the donor for the benefit of the estates of the deceased residuary legatees under the terms of his will?

The surrogate holds that the appointment was validly exercised and that the fund should be transmitted to the English executors and trustees of the estate of Philip Champion de Crespigny for the purpose forthwith of paying in equal and absolute shares the amount of the fund to Valentia Lancaster and Claude Raul Champion de Crespigny, who were the ultimate appointees of the fund.

The testatrix here, who was known as Princess Hatzfeldt, was the daughter of Collis P. Huntington, famous as a builder of railroads and collector of art. Both she and her father were residents of New York and their wills were probated in this court. The fund which is the subject of the present dispute amounts to approximately $250,000. It consisted of a part of a trust fund of $1,000,000 created under the will of Mr. Huntington with income

payable to his daughter, Princess Hatzfeldt, for life. Under his will the primary disposition of the remainder was to her issue, *per stirpes*. That disposition failed because of the fact that she left no issue. The alternative dispositions thus became operative. For these eventualities his will provided: " But in case the said Clara Elizabeth, Princess Hatzfeldt, should die, leaving no such issue her surviving, then upon her death to pay, deliver over and transfer the capital of such trust estate to such persons and parties and in such parts and proportions as said Princess Hatzfeldt by her last will and testament, or by an instrument in the nature of a last will and testament executed by her in the presence of at least two witnesses shall have directed and prescribed. Unless otherwise disposed of as hereinbefore prescribed, the capital of such trust estate shall fall into and become a part of the residue of my estate and be dealt with accordingly."

Mr. Huntington died August 13, 1900. His daughter died on December 17, 1928. She left a will and two codicils. Under the fourth paragraph of her will, she made specific reference to the power of appointment conferred upon her by the will of her father and expressly stated that she intended to exercise such power by the designation of certain beneficiaries of enumerated amounts out of the trust fund of approximately $1,000,000. At the time of her death and in the course of the administration of her individual and the appointive estate, up to the time of the pending proceeding, no controversy arose. Distribution was made to her designated legatees of outright amounts.

In her will she had appointed out of the trust fund the sum of $500,000 to her friend, Commander Philip C. de Crespigny. One-half of that amount was given to him outright and the remaining half was directed to be delivered to a trustee, which is the accounting party here, with directions to pay the income to him during his life. Upon his death, the fund was directed to be paid over " in trust for such person or persons for such purposes and in such manner as the said Philip Champion de Crespigny shall by Will or Codicil appoint and in default of and subject to any such appointment I direct that the said investments and income shall fall into and be dealt with as part of my residuary estate."

By another paragraph in her will she constituted Commander de Crespigny as the residuary legatee of any balance of the appointed fund. That clause refers to the bequest of " any surplus of the said fund." It was plainly intended by the testatrix as the equivalent of a general residuary clause of the appointive fund. In the testamentary instruments she made further dispositions of her individually owned property.

Finally, there was a general residuary clause contained in the ninth paragraph of the will, broad and sweeping in nature, and sufficient in language and in law to cover any balance of undisposed individual or appointive property, in which she designated de Crespigny as her residuary legatee of the balance of her estate including any legacies or other provisions "which shall fail in whole or in part to take effect."

Commander de Crespigny died a resident of England in 1939. In his will he specifically recited possession of the power of appointment which had been conferred upon him under the will of Princess Hatzfeldt. In the instrument he appointed the fund in dispute here to his trustees upon trust to pay certain preliminary dispositions (of no materiality here), with the gift of the residue to his niece, Valentia Lancaster, and to his brother, Claude Raul Champion de Crespigny, in equal shares absolutely.

Counsel for the trustee of the estate of Mr. Huntington, the donor, have raised certain contentions as to the invalidity of the exercise of the power of appointment by Princess Hatzfeldt and the illegality of the secondary power of appointment conferred by her on Commander de Crespigny.

Among these contentions, they claim that the Princess was without authority, under the will of her father, to delegate a further power of appointment to de Crespigny, and that thereby the attempted exercise of the power failed and the fund passed to the residuary legatees under the donor's will.

It is further argued that the rule in *Matter of Kennedy* (279 N. Y. 255) applies here. It is claimed that the rule in the *Kennedy* case prohibited the Princess from creating an additional trust for the life of de Crespigny and that because of the contravention of the terms of the donor's will, the power of appointment was invalidly exercised and that the fund passed to the residuary legatees under Mr. Huntington's will.

It is finally contended that Princess Hatzfeldt by her will required Commander de Crespigny to create a third trust which was in excess of the power given to her under her father's will and in violation of our Statute against Perpetuities.

None of these contentions has any support under the language of the various instruments of the three persons here involved. Nor are such contentions supported by any recognized authorities in the courts of our State. Indeed, the determination of the questions here involved might be covered by a few paragraphs. Their disposition has been extended, perhaps to an undue length, only because of the zeal displayed by counsel in developing their arguments in their briefs and the necessity for consideration and disposition.

It is difficult to perceive any theory under which the respondent claiming invalidity can ultimately recover the fund in dispute.

If the appointment in trust to Commander de Crespigny is invalid, the fund passes to him outright under the special residuary clause.

If the appointment to Commander de Crespigny in trust, coupled with the power in him to appoint the remainder, is invalid, the undisposed remainder passes under the general residuary clause as an alternative exercise of the power by this donee.

In other words, if the special residuary clause was not sufficiently broad, the fund passed to him absolutely under the general residuary clause and would be presently payable to the executors of his estate.

It, therefore, appears that if there were any informalities in the preliminary dispositions, the appointive property must have passed in any event absolutely to Commander de Crespigny.

The special residuary clause covered every part of the appointive fund undisposed of by the preliminary dispositions and devolved such parts whether they failed through illegality or for other cause upon Philip de Crespigny in absolute ownership. That clause disposed of the bequest of " any surplus of the said fund." I stated in *Matter of Logasa* (163 Misc. 628): " A long line of cases has firmly established the general rule that the residuary clause of a will carries with it whatever may not be otherwise legally disposed of." (*Riker* v. *Cornwell*, 113 N. Y. 115; *Lamb* v. *Lamb*, 131 id. 227; *Albany Hospital* v. *Albany Guardian Society*, 214 id. 435; *Matter of Cole*, 235 id. 48.) " Where the residuary bequest is not circumscribed by clear expressions in the instrument and the title of the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue, whether by lapse, invalid dispositions, or other accident." (*Matter of Cole*, *supra*.)

It is not uncommon in cases involving the exercise of a power of appointment, that the donee or the draftsman of his will may have anticipated possible invalidity in the preliminary directions by way of trusts and life estates or other forms of disposition and have guarded against it by an alternative valid and outright residuary clause. In two recent cases which came before me — *Matter of Rogers* (168 Misc. 633) and *Matter of Hart* (172 id. 453) — the donee and the draftsman envisioned possible invalidity and made substitutional gifts which were legal. The will of Princess Hatzfeldt in the special residuary clause is equally clear in its expression of intent and equally forceful in its results.

But even if the special residuary clause had been insufficient, the general residuary clause would have constituted an effective exercise of the appointive property to him. Without specific mention of the appointive property, the exercise of the power would have been legal and proper according to section 18 of the Personal Property Law. That " statute steps in and sends the property, subject to the power, in the same direction as that in which the testatrix has sent her own property." (*Lockwood* v. *Mildeberger*, 159 N. Y. 181, 188.) As noted above, any undisposed of balance of the appointive property was, under the will of Princess Hatzfeldt, directed to " fall into and be dealt with as part of my residuary estate." Thus, even if the trust for the life of de Crespigny had been unauthorized, the general residuary clause would have constituted an effective and valid exercise of the power to him. (*McLean* v. *McLean*, 174 App. Div. 152; affd., 223 N. Y. 695; *Lockwood* v. *Mildeberger, supra; Low* v. *Bankers Trust Co.*, 270 N. Y. 143; *Matter of Lynn*, 174 Misc. 361; Pers. Prop. Law, § 18; Real Prop. Law, § 176.)

In *McLean* v. *McLean* (*supra*) the power of appointment conferred by the donor was special and limited. The donee attempted to appoint the property to his wife for life. She was a person within the permitted class under the donor's will. He gave her a further power, to be executed by her will, but limited to appoint one-half of the fund to a hospital and to a club, neither of which institutions were within the permitted class of beneficiaries designated by the donor. His residuary legatee was his wife. The residuary clause was held to have executed the power effectively despite the invalidity of the prior dispositions to unauthorized institutions. In the pending proceeding, the power of appointment is general and beneficial and without any limitation whatsoever upon the person who might be selected by the Princess. " The choice of the future beneficiary is left to the judgment, to the inclination, nay, even to the caprice of the donee of the power." (*Cutting* v. *Cutting*, 86 N. Y. 522, 543.) In view, therefore, of the effectiveness of the special and general residuary clauses under the will of Princess Hatzfeldt and the passing in any event of the fund to Commander de Crespigny absolutely, the ultimate disposition of the fund would have been the same. If there had been any invalidity in the prior dispositions, the fund would now be directed to be paid to his executors and trustees and in the ordinary course of administration would be turned over by them to his two residuary legatees whom he has separately designated under his will as the recipients of the same appointive fund.

Regardless, however, of this conclusion, the surrogate holds that the preliminary dispositions of Princess Hatzfeldt constituted a valid and effective exercise of the power. The decisions in our State have held that it is within the authority of the donee of a general power to give a further and secondary power of appointment to some other person. (*Cheever* v. *Cheever*, 172 App. Div. 353; *Lehman* v. *Spicer*, 108 Misc. 721, BENEDICT, J.; affd., on opinion below, 188 App. Div. 931; *Frear* v. *Pugsley*, 9 Misc. 316.)

It is argued by counsel for the trustee under the donor's will here that the maxim *delegatus non potest delegare* is applicable here. That maxim has been applied in greater or less degree to the powers and authority of delegates, agents, attorneys, fiduciaries, public officials and legislative bodies. The maxim has been generally stated to mean that a delegate cannot delegate. An agent cannot turn over his functions to a subagent without the authority or consent of the principal. A public officer cannot lawfully devolve his duties upon another.

It is argued here that the power conferred upon the Princess was one of confidence in her personal judgment and ability and that she alone could specifically name the ultimate beneficiaries.

It is further urged that the Court of Appeals has never approved the decisions in *Cheever* v. *Cheever* (*supra*) and *Lehman* v. *Spicer* (*supra*), cited above, in which the Appellate Division held that a donee of a general power may create a further power of appointment.

The research of counsel and investigation of the surrogate have failed to discover any reported decision in this State which dissents from the rule laid down in the *Cheever* and *Lehman* cases.

The former was decided by the Appellate Division, First Department, in a well-considered opinion written by Justice GREENBAUM.

The latter was decided by the Second Department, which affirmed upon the opinion below of Justice BENEDICT.

Neither of these cases reached the Court of Appeals, but there is a statement in *Crooke* v. *County of Kings* (97 N. Y. 421, 459) which is in accord with the principle adopted in each of them. The statement is mere dictum, because the decision of the majority of the court turned upon another point. Judge EARL there wrote: " There is abundant authority and reason for holding that the execution of the absolute testamentary power of disposition given to Mrs. Crooke could be delegated to her husband, and I am confident that there is not a dictum or even a hint to be found, in any text-book or judicial opinion, to the contrary; and to me it is inconceivable how there could be any." That statement is rather broad, even viewed from its date, and time has developed at least one such decision to the contrary in another State. In *De*

*Charette* v. *De Charette* (264 Ky. 525; 94 S. W. [2d] 1018) it was held that a creation of a further power of appointment was invalid. Apparently, in that case the court proceeded upon the basis of a finding of an intent in the donor's will that prohibited the creation of such a new power. It was stated that the entire instrument evidenced trust and confidence in the donee and that the selection of the ultimate·objects of the power was personal to the donee. Whether the determination in *De Charette* v. *De Charette (supra)* was confined to the search and ascertainment of the intent of the particular donor in his will, or whether the highest court of Kentucky attempted to establish a general rule of property, its determination has no weight or application as a rule of property in this State because our own authorities are to the contrary. Moreover, there is no evidence of any specific intent in the will of Mr. Huntington that the general power granted to his daughter was one involving personal confidence in her. On the contrary, his will indicates the broadest grant of discretion vested in her, to choose the recipient of the fund.

It should be noted also that the modern trend in the law of property has been to recognize the power of the donee to create a new power, upon the theory that in the testamentary disposition by the donee, the property should be considered as his or her own. It is declared in the Restatement of the Law of Property: " The donee of a general power can effectively exercise the power by creating a new power." (Proposed Final Draft [1938], § 480.) Although the donee of a general power exercisable by will may not transfer the property during his life, at death he may make the property completely his own and he may dispose of it by will in any manner he chooses. (50 Harv. Law Rev. 945, 946.)

The further contention that the rule in *Matter of Kennedy (supra)* applies to this estate is without merit. Here the power was general and unrestricted. In *Matter of Kennedy (supra)* the power was special and limited. The Court of Appeals found that the intention of the donor, as expressed in his will, was to compel a final and absolute distribution of the fund and that the donee was without authority to create further trusts even for the lives of those within the special and limited class of beneficiaries. There is no such intent indicated in the will of Mr. Huntington, the donor here, and the power which he gave to his daughter was expressed to the broadest and most comprehensive extent. Princess Hatzfeldt, therefore, had the legal right to create a trust for the life of Commander de Crespigny.

The remaining contention that the appointment made by Philip C. de Crespigny created trusts instead of absolute dispositions to his

two designated beneficiaries is likewise overruled. His will, like the will of Princess Hatzfeldt, was concededly drawn by an English solicitor who employed the terminology of the law of that country. His will stated that the fund here involved was given unto his trustees " upon trust " to pay certain expenses, debts and legacies " and to stand possessed of the residue thereof in trust for such of them, my niece * * * and my brother * * * in equal shares, if more than one absolutely." The use of the terms " upon trust " and " in trust " plainly referred to the relation of fiduciary in which the trustee took. No life estates were intended. No disposition of any remainder, after the respective life, was made. The use of the word " absolutely" characterized the outright nature of the gift. The phrase " on trust " is frequently used in the relatively recent statutes which reformed the laws of inheritance of England, even in its application to the duties of a legal representative in the administration of an intestate estate. (Administration of Estates Act [1925], §§ 33, 46.)

The decisions in our own State have firmly established the rule that an absolute gift will not be cut down to a life estate by repugnant or ambiguous language. (*Tillman* v. *Ogren*, 227 N. Y. 495; *Weber* v. *Kress*, 198 App. Div. 687; *Roseboom* v. *Roseboom*, 81 N. Y. 356; *Lawrence* v. *Calam*, 202 App. Div. 538.) It is an established canon of construction in this State that even where there is a mere expression indicating a trust, but without limitation of the time of enjoyment and without expression of a gift over of the remainder, the gift must be construed as absolute. (*Matter of Sackett*, 201 App. Div. 58; *Cammann* v. *Bailey*, 210 N. Y. 19.)

Under these rules, therefore, the surrogate holds that it was the intent of Commander de Crespigny that his niece and his brother as the ultimate appointees of the fund should take their equal shares absolutely and that the executors and trustees of his estate were merely the conduits for collection and immediate distribution to such beneficiaries. (*Jacoby* v. *Jacoby*, 188 N. Y. 124; *Denison* v. *Denison*, 185 id. 438; *Wendt* v. *Walsh*, 164 id. 154; *Gueutal* v. *Gueutal*, 113 App. Div. 310; *Matter of Terwilligar*, 142 Misc. 249.) Payment is directed to be made to such executors and trustees for the purpose of making distribution.

Submit decree settling the account and construing the wills accordingly.