Joseph A. Cox, S.
The decedent herein was a resident of England whose last will and testament was duly proved, admitted to probate and recorded in the Principal Probate Registry of the High Court of Justice of England. The will, drawn by the decedent’s English solicitors, disposed of her entire estate, including real and personal property which she owned in the Counties of New York and Queens. With respect to the latter property, characterized throughout her will as the testatrix’ “ American property” she designated the petitioners in this proceeding to serve as executors and trustees and referred to them as her “ American Trustees ”.
The American real property remaining in the hands of the American trustees and still being administered by them consists of an undivided one-half interest in two parcels of real property in the County of New York which were owned by the decedent and one Edward M. K. Mead as tenants in common. The said Edward M. K. Mead, the decedent’s cousin, is the same person who was designated by the testatrix as one of her English trustees (now the sole remaining trustee) and as remainderman of the trust created by the testatrix in article 10 of her will.
The pertinent portions of the decedent’s will which require construction and interpretation read as follows:
“ 14. i devise and bequeath all my real and personal estate situate and being within the jurisdiction of the courts of the United States of America and all debts and choses in action recoverable or enforceable in such Courts (hereinafter called ‘ my American Property ’) to my American Trustees in trust to deal with the same as follows (but subject always to the powers set forth in Third Schedule hereto)
“ (a) As to such part thereof as shall consist of personalty to collect receive and take possession thereof and after payment of all expenses connected with such collection and receipt i direct my American Trustees to transfer and pay over the same to my English Trustees whose receipt shall be a sufficient discharge to my American Trustees
“ (b) As to such part thereof as shall consist of real estate upon trust to sell call in and convert into money the same and until such sale calling in and conversion to pay over the remaining income (after payment of all expenses connected with the management) to my English Trustees whose receipt shall be a full and sufficient discharge to my American Trustees and after such real estate shall have been sold upon trust to pay over the net proceeds of sale to my English Trustees whose receipt shall be a full and sufficient discharge to my American Trustees.”
*377 It is the contention of the executors of the husband’s estate, which would take in the event of intestacy, that the purported trust created by the testatrix in article 14 was void from its inception in that it did not meet the requirements of section 96 of the Eeal Property Law and that intestacy resulted as to all the property devised to the American trustees. In the alternative they contend that the failure of the testatrix to provide for any disposition of the real property still remaining in the hands of the American trustees at the time of her husband’s death requires a finding of intestacy at least as to such property. Edward M. K. Mead, the English trustee and remainderman of the English trust created by article 10 of the will, contends that a valid trust was created, that the clauses o.f decedent’s will herein set forth must be read to gether, and that the will gave to the American trustees a general power in trust as defined by sections 131 and 134 of the Eeal Property Law.
The primary purpose of this court in any construction proceeding is to ascertain the intent of the testator. Once ascertained that intent should be carried out if it is at all possible so to do without violation of settled legal principles (Matter of Selner, 261 App. Div. 618, affd. 287 N. Y. 664; Matter of Birdsell, 271 App. Div. 90, affd. 296 N. Y. 840; Matter of Bisconti, 306 N. Y. 442; Matter of Fabbri, 2 N Y 2d 236; Matter of Englis, 2 N Y 2d 395).
A careful reading of the decedent’s will discloses her intent and testamentary plan with respect to the disposition of her property. Although it was her desire to give the life use and benefit -of her property to her husband, she desired her property to be distributed, upon her husband’s death, among several persons and charities of her own choosing. She had no children of her own and the bulk of her property was distributable to cousins. The persons who would ultimately take as a result of intestacy would be the children of her deceased husband, none of whom was mentioned by the testatrix in her will.
Any understanding of the language used by the testatrix must of necessity be predicated upon an understanding of what the words and phrases used meant to the testatrix and to the English solicitors who drew the will. Although the language used may be similar to language used by attorneys in this jurisdiction its meaning and legal effect is not the same. In Matter of Wildenburg (174 Misc. 503) Surrogate Foley commented that the phrases “ upon trust” and “ in trust ” are often used by English solicitors solely to describe the fiduciary relationship in which any fiduciary takes property and such phrases are not *378 necessarily employed as devises to establish a trust in the technical sense. Surrogate Foley also said: “ The phrase ‘ on trust ’ is frequently used in the relatively recent statutes which reformed the laws of inheritance of England, even in its application to the duties of a legal representative in the administration of an intestate estate. (Administration of Estates Act [1925] §§ 33, 46.) ” (Matter of Wildenburg, supra, p. 511.)
Under the laws of this State the language used by the testatrix created a power to sell the real property (Real Property Law, §§ 99, 131, 134). It is not necessary to determine whether the language used by the testatrix effected an equitable conversion of the real property which exempted it from the application of section 96 of the Real Property Law. (Salisburg v. Slade, 160 N. Y. 278; Matter of Palumbo, 284 App. Div. 834.)
The holding in Robert v. Corning (89 N. Y. 225) is decisive of the issues here raised. In the will under consideration in that decision the testator authorized a sale of real property without restriction as to the time of sale and, pending such sale, authorized his trustees to collect rents and profits for the benefit of certain named persons. There, as here, the validity of the disposition was challenged as violative of the Statute of Perpetuities. The court said (pp. 238-239): ‘ ‘ But it is unnecessary to determine whether the executors took under the will in question, the legal title to the real estate, for in the view we take of the will, there was no suspension of the power of alienation, whether the executors took a trust estate, or were simply donees of a trust power. In either character, whether as trustees or as executors only, they could at any time from the moment of the testator’s death, have conveyed an absolute fee in possession. * * * The statute of perpetuities is not violated by directions which may involve some delay in the actual conversion or division of property, arising from the necessity of giving notice, or doing other preliminary acts. (Manice v. Manice, 43 N. Y. 303.) Such delays are not within the reason or policy of the statute. The statute was aimed against the creation of inalienable trust estates, or contingent limitations, postponing the vesting of titles beyond the prescribed period. * * * The power of sale was not fettered by the discretion given by the will. The executors could sell and convey the land at any time, by a perfect title. It may be conceded that they were bound to exercise their discretion in good faith, and to delay the sale if the interests of the beneficiaries seemed to require it. But there can be no unlawful perpetuity unless the power of sale is suspended, and the mere fact that it might *379 be the duty of the executors, in the exercise of their discretion, .to postpone the sale to await a more favorable market, does not, we think, constitute such a restraint as suspends the power of alienation within the statute.”
The American property disposed of by the testatrix in clause 14 of her will is bequeathed and devised to the ‘ ‘ American trustees ” for the sole purpose of sale and conversion into money which the said trustees are instructed to remit to the English trustees. There is no term or life upon which the trust is based and there is no disposition of any remainder. The simple fact is that the “ American trustees ” take under the terms of that clause no larger or greater estate or interest in the property bequeathed and devised to them than any executor takes to property which he obtains possession of under the terms of any will executed in accordance with the laws of this State. They had the right to manage the property. They had the right to sell the property and the moneys resulting from the sale and management of the property are to be held by them in a fiduciary relationship, in other words “ upon trust ”. It is the opinion of this court that the duties imposed upon the ‘ American trustees ’ ’ by the testatrix under clause 14 of her will were purely descriptive of the duties which normally devolve upon persons designated as executors and that no trust was created thereby (Deegan v. Wade, 144 N. Y. 573). When thus viewed there can be no intestacy as to any of the decedent’s American property. The directions given by the testatrix were clear and simple and the fact that they have not as yet been carried out by the American trustees does not destroy either their meaning or legal effect.
Under the provisions of clause 10 of the decedent’s will the English trustees were directed to invest the capital of the American property which was paid over to them by the “ American trustees”, to pay the income thereof to the decedent’s husband Andrew Sydney Bansome during his lifetime and upon his death to pay the capital and income to the respondent Edward M. K. Mead. The death of the decedent’s husband termined the trust and vested ownership and title of all the property comprising the trust remainder in the respondent (Matter of Miller, 257 N. Y. 349, 356).
Submit decree on notice or consent construing the will and settling the account accordingly.