S. Samuel Di Falco, S.
This is an application to construe the will and codicil to determine the intended disposition of an interest in real property.
The decedent, a resident of France, died possessing an interest in certain real property located in Ohio. Pursuant to the will of her father, decedent possessed a remainder interest along with her brother Malcom Wren in real property known as “ Wrenwood Farm ”. The remainder interest is subject to a life estate of Thomas F. Wren. She made no specific devise of this real property interest, but in her will dated June 5, 1958 she divided her residuary estate into three equal parts. Two of these equal parts were bequeathed in trust for her son and daughter, and the third, less a bequest of $5,000, was given outright to three named granddaughters-. She executed the codicil following the birth of a fourth granddaughter, Catherine Vaughan-Fowler. The codicil was executed in Ireland on February 6,1964 and has been admitted to probate in New York along with the will. In the codicil she revoked that part of the residuary estate where she had directed division of her property “ but only where that division could apply to the ‘ Wrenwood Farm ’ in Ohio. Should I predecease my half-brother Thomas F. Wren *1078 my share of the 1 Wrenwood Farm ’ 76.75 acres in Moorefield Township Clark Co. (near Springfield) Ohio is to be given in trust to my daughter Hilary Vaughan-Fowler for my granddaughters, Alexandra Vaughan-Fowler, Susan-Ursula Vaughan-Fowler, Margaret Mary V aughan-Fowler and Catherine Yaughan-Fowler. ’ ’ Petitioner, Hilary yaughan-Fowler, asks the court to construe the language of the codicil and to determine whether this is a passive trust.
Since the disposition concerns real property located in another • State, this court cannot determine the ownership of the realty, the validity of its disposition or the validity and effect of any trust provisions relating to it. The validity of a trust of real property and whether it be an active or passive trust are matters to be determined by the local law of the situs, there being no provision in the will for the sale of land and remission of proceeds to New York. (5 Scott, Trusts [3d ed.], § 651, p. 4115. See, also, EPTL 3-5.1, subd. [b], par. [1].) The question remains, however, whether this court may interpret the meaning of the words used by the decedent in her codicil. There have been a number of cases in New York which have held that a will insofar as it affects real property in another State, is to be construed by the courts of that State. (Matter of Good, 304 N. Y. 110; Matter of Ellis, 30 Misc 2d 225; Matter of Gallagher, 10 Misc 2d 422, affd. 7 A D 2d 1029; Matter of Osborn, 151 Misc. 52.) EPTL 3.5-1 (subd. [b], par. [1]) also provides that the ‘ ‘ effect, [and] interpretation * * * of a testamentary disposition of real property * * * are determined by the law of the jurisdiction in which the land is situated. ’ ’ Thus there seems to be no question that the legal effect of the language used in a will must be determined by the law of the jurisdiction in which the land is situated if that jurisdiction has a policy of giving effect to particular expressions without going into the intent and purpose which a particular draftsman has intended to give them.
The interpretation of a will on the other hand, even though mentioned in EPTL 3-5.1 as controlled by the law of State in which the land is situated, is a different matter. The question here is one of fact and not of law and thus the laws of the other jurisdiction would not necessarily be decisive. As stated by Professor Scott, “ In interpreting an instrument, the court is attempting to determine as to the particular matter in issue what the particular settlor or testator intended or probably intended or would probably have intended if he had thought about the matter. The question here is one of fact and not of *1079 law. Where a testator dies domiciled in one state disposing of land in another state, the court, in ascertaining the intention of the testator, is likely to lay weight on the usage at the domicil of the testator, particularly his domicil at the time of the execution of the will, or on the usage at the place of execution of the will. But it will consider not only the language used in the trust instrument but also all the circumstances which bear on the ascertainment of the intention of the testator or settlor.” '(5 Scott, Trusts [3d ed.], § 648, p. 4091.) (See, also, Restatement 2d, Conflict of Laws, § 277 comment (a); Matter of Gernon, 35 Misc 2d 12; Matter of Knickel, 89 Ohio L. Abs. 135.) If it is impossible to ascertain the testator’s actual intention from the writing or from other admissible evidence, then something in the nature of presumption or a rule of construction must be indulged in to fill out what would otherwise be a gap in the instrument. This is the process of construction (Restatement 2d, Conflict of Laws, supra). There is some authority that •.where the testator designates the law of a State as applicable law in matters of construction, it is to be inferred that he intends the local law in that State to govern and that this designation is effective (5 Scott, Trusts [3d ed.], § 648, p. 4092).
In the instant case the will provides in article seventh: “ I hereby declare that I elect that the testamentary dispositions herein contained shall be construed and regulated by the laws of the State of New York, and it is my will, and I direct my Executors to probate this, my Will, in the Surrogate’s Court of the State of New York, County of New York, and I direct that the trusts hereby created shall be New York trusts, and I direct that they and the disposition and administration of my estate shall in all respects be construed, governed and regulated by the laws of the State of New York.”
A careful reading of the decedent’s will discloses her intent and testamentary plan with respect to the disposition of her property. She disposes of her personal property to her daughter and her three granddaughters outright, in equal shares. The residuary is divided into three parts, two in trust for her son and daughter and the third less the bequest of $5,000 is given absolutely to the three granddaughters. Thus in her will while she set up trusts for her children all of her gifts to the granddaughters were made outright. In the codicil she removed the Ohio property from the property which she intended to be divided into separate shares and provided that this real property be given ‘ ‘ in trust to my daughter ’ ’ for the three named granddaughters along with the fourth granddaughter, who had *1080 been born subsequent to the execution of the will. The will is a formal typed instrument with every indication of professional draftsmanship. The codicil is a holograph which was patently made by the decedent without professional assistance, although she may have consulted forms or other instruments. While she used the words “ in trust ”, she obviously did not intend to create a trust in the technical and legal sense. The decedent, as a lay person, cannot reasonably be assumed to have used the term scientifically or with precision. Moreover, the decedent was a domiciliary of France and she executed the codicil in Ireland during one of her many visits there. Any understanding of the language of the decedent must, of necessity, be predicated upon an understanding of what the words or phrase meant to her and on the usage at the place of her domicile or at the place of execution. (Matter of Ransome, 37 Misc 2d 375.) The phrase “ upon trust ” or “ in trust ” is frequently used in wills drawn abroad, in connection with outright gifts which are to be paid absolutely by a fiduciary. (Matter of King, 100 N. Y. S. 2d 353.) In Matter of Ransome (supra, pp. 377-378) Surrogate Cox stated: “ Although the language used may be similar to language used by attorneys in this jurisdiction its meaning and legal effect is not the same. In Matter of Wildenburg (174 Misc. 503) Surrogate Foley commented that the phrases ‘ upon trust ’ and ‘ in trust ’ are often used by English solicitors solely to describe the fiduciary relationship in which any fiduciary takes •property and such phrases are not necessarily employed as devises to establish a trust in the technical sense. Surrogate Foley also said: ‘ The phrase “ on trust ” is frequently used in the relatively recent statutes which reformed the laws of inheritance of England, even in its application to the duties of a legal representative in the administration of an intestate estate. (Administration of Estates Act [1925] §§ 33, 46.) ’ (Matter of Wildenburg, supra, p. 511.) ”
In the present case the scheme of the will is for outright bequests to the granddaughters and while the words “ in trust ” were used in the codicil, all of the attributes of the trust such as term of duration, application of income and disposition of the remainder are lacking. Furthermore, in the same codicil decedent appointed two individuals and a blew York trust company as trustees of the other trusts. If decedent intended a technical trust of this real property interest, she could easily have given it to her trustees, rather than naming her daughter as a separate and individual trustee. The daughter and the children all reside in England. If decedent intended a real *1081 trust, with active duties for the trustee, she would hardly have ignored those appointed in the codicil, especially since one is a New York trust company, and appointed her daughter, who is so far removed from the scene. It is more reasonable to infer from a reading of the will that decedent intended her daughter, who is the mother of these children, to act in a guardianship capacity (see Matter of Dedon, 68 Misc 2d 1012). This is especially so since two of the granddaughters were infants at the time of the execution of the codicil, one, Catherine, having been born only five months prior to its execution. The court is of the opinion, therefore, that decedent intended to make an outright gift of her interest in her real property to her four granddaughters and not a disposition of the property in trust.
It must be pointed out that this court is not deciding a question of title to the real property located in Ohio since it has no jurisdiction over the land and a decree of this court cannot affect record title in that jurisdiction. The court is merely interpreting the intent of the decedent in accordance with her expressed direction to do so contained in the will. This jurisdiction has an interest in the question since the decedent provided in the will that any trust established therein is to be a New York trust and the court must, therefore, determine whether the trust in this particular property was intended.
JThe petitioner had originally included a request for an appointment of a guardian of the infant beneficiary, but has now withdrawn that request. The reason for such withdrawal is that the real property in Ohio is intended to be sold and thus a guardian is not necessary in this jurisdiction.